## 77844. CHRISTIAN v. THE STATE.
### (379 SE2d 807)

BEASLEY, Judge.

Defendant, convicted of aggravated assault (OCGA § 16-5-21 (a) (2) and (c)), Count 2, and possession of a firearm during commission of a felony (OCGA § 16-11-106 (b) (1)), Count 3, appeals.

Viewing the evidence with every inference and presumption in favor of the verdict, *Thomas v. State*, 173 Ga. App. 810, 812 (2) (328 SE2d 422) (1985), it shows that on January 4, 1986, defendant's sister-in-law called the police to report a domestic dispute between defendant and her sister, his common-law wife, and that defendant had a gun. Upon arriving at the apartment, Officer Hicks found defendant's wife crying and defendant absent. Defendant arrived during the questioning of the wife and a scuffle ensued which resulted in the officer's shoulder being separated and defendant being arrested for battery.

After being released on bail, defendant obtained a copy of the police incident report, which made him very angry because he felt he had been harassed and treated improperly by the officers.

During the day and evening of January 14, defendant consumed copious amounts of alcohol and decided to get even with the police. At approximately 1:00 a.m. on January 15, he went to a gasoline station near the apartments and placed a call to 911. The call was taped as is standard. The caller identified himself as James Alexander and reported a domestic dispute in an apartment in the building next to defendant's. He also gave a phone number.

Upon arriving at the apartments, Sgt. White got out of his marked patrol car and was shot at three times. One of the bullets passed within two to three feet of him and another hit, about chest high, a van parked in front of his car. A .38 caliber slug was recovered from the van. Sgt. White saw muzzle flashes coming from the darkened end of one of the apartment buildings. The officers later located a bullet crease in the roof of a taxicab parked between the area of the muzzle flashes and Sgt. White's car.

After checking the area and finding no one, the officers went to the apartment where the dispute had been reported. A woman resi-

dent informed the officers no one there had called, everything was fine, and her child and she had been asleep.

Detective Green was in charge of the investigation. The phone number given was traced to a residence six miles away and the resident knew nothing of it. Det. Green recalled the prior incident involving Officer Hicks at these apartments. Officer Hicks identified defendant's voice on the 911 call tape.

Arrest and search warrants were obtained and executed at 6:00 a.m. on January 16. Four empty .38 shell casings were found on the dresser in defendant's bedroom. The gun was not located and defendant and his wife denied knowledge of the gun and shooting. They said they heard the shots but were both in the apartment. The second bedroom was not searched because two children were asleep in it.

Defendant was arrested, read his *Miranda* rights, and taken to the station where he remained in an interview room from approximately 7:00 a.m. until 8:55 a.m., when he was read his *Miranda* rights again. He signed a waiver of them. He initially said the casings were from his and his brother Eddie's shooting on New Year's and they had come from Eddie's .38. Eddie was interviewed and denied owning a .38.

Det. Green called Sheriff's Deputy Stan Christian, defendant's cousin. Deputy Christian listened to the tape and also identified the voice as defendant's. Deputy Christian then asked to talk with defendant and spent about thirty minutes with him. He said no promises or threats were made to defendant and, although defendant did not admit the shooting to him, the deputy deduced that defendant had done it because he cried and acted remorseful.

Deputy Christian told Det. Green that defendant wanted to talk to them. Defendant said he made the call, inventing a name and phone number and giving the number of an apartment in the building next to his. He lay in wait for the officers and fired two shots at Sgt. White, although at the time he did not know the officer's identity. He ran to his apartment, threw the spent casings in the trash, and hid the gun under his children's mattress. Defendant was still upset and asked one of the officers to take down his statement, which was done. Defendant signed each page of the statement. The officers obtained a consent to search from defendant and returned to the apartment where they found two .38 bullets under the mattress. The gun was not found.

The next day, when the officers went to the jail to talk with defendant, he refused. He carried with him a piece of paper on which another inmate had written suggestions for him; among them were "retract statement, witness to threats (wife)" and words to the effect that defendant was under stress and needed a psychiatric examination and alcohol treatment.

Defendant was indicted for the two charges set out above and for assault with intent to murder (Count 1) and battery against Officer Hicks on January 4 (Count 4). He was acquitted of Count 4 and the jury was unable to reach a verdict as to the remaining counts. On retrial, he was found not guilty on Count 1 and guilty on the remaining two counts. An out-of-time appeal was duly permitted by the trial court.

1. Defendant contends the evidence was legally insufficient to support his conviction because his confession was not corroborated as required by OCGA § 24-3-53.

" ' "[P]roof of the corpus delicti is held to be sufficient corroboration." (Cit.)' *Rosser v. State*, 157 Ga. App. 161, 162 (2) (276 SE2d 672) (1981). See also *Brown v. State*, 167 Ga. App. 851 (307 SE2d 737) (1983); *Patrick v. State*, 169 Ga. App. 302 (2) (312 SE2d 385) (1983), aff'd 252 Ga. 509 (314 SE2d 909) (1984). The corroborating evidence or circumstances need not connect the defendant definitely with the perpetration of the offense. [Cits.] '(C)orroboration in any material particular satisfies the requirements of the law. (Cits.)' *Reynolds v. State*, 168 Ga. App. 555 (1) (309 SE2d 867) (1983). In the instant case the corpus delicti was established by the victim's testimony, which evidence corresponded with the confession in several respects.' " *Kirksey v. State*, 177 Ga. App. 428, 429 (2) (339 SE2d 401) (1986).

2. Defendant contends that the court erred in admitting his confession as it was taken in violation of his Federal Constitutional rights under the Fifth and Fourteenth Amendments. In the motion to suppress the confession it was contended that the confession was the result of mental and physical torture and harassment, as well as promises of favor made by the police.

During defendant's first trial in May, the hearing required by *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964) was held and the trial court determined that the confession was voluntarily given and denied defendant's motion.

"The test of admissibility of custodial confessions is the preponderance of the evidence. [Cits.] To determine whether the state has proven that a confession was made voluntarily, the trial court must consider the totality of the circumstances. [Cits.] . . . Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal. [Cits.]" *Gates v. State*, 244 Ga. 587, 590 (1) (261 SE2d 349) (1979).

The fact that defendant was held for one and a half hours before he was questioned does not require a different result. See *Brooks v. State*, 258 Ga. 20, 21 (1) (365 SE2d 97) (1988).

A rational trier of fact could have found the confession admissi-

ble by a preponderance of the evidence.

3. Defendant complains that the trial court's sua sponte giving of the "*Allen* charge" [*Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896)] was a violation of his Sixth and Fourteenth Amendment rights. Although referred to as the *Allen* charge, the charge actually given by the court is that contained in Vol. II, Suggested Pattern Jury Instructions, p. 198 and approved in *Ratcliff v. Ratcliff*, 219 Ga. 545 (134 SE2d 605) (1964) and *Spaulding v. State*, 232 Ga. 411, 413 (4) (207 SE2d 43) (1974).

The jury was instructed in the morning and indicated sometime after lunch that it was "hung" on Count 2. Before any action was taken, it then announced it was no longer "hung" but needed clarification on Count 3. It continued its deliberations before asking to be excused for the night. At some time the next morning, the jury communicated that it had "no unanimity on any count." The judge advised counsel that he was going to give the *Allen* charge. Counsel for defendant stated that "the defense would object to that charge as being highly inflammatory and suggestive."

After the approved pattern charge was given, the only reservation expressed by defendant was an inquiry as to whether the court had included in the instruction a reminder that the jury was not required to "subordinate their own opinions." The court stated that it had so instructed and asked if there was anything else; no further objection was made.

The objection enumerated was not made at the trial and will not be considered here for the first time. *Smith v. State*, 187 Ga. App. 322, 324 (4) (370 SE2d 185) (1988).

Without deciding whether any objection has been waived by failure to make it after the charge was given, the giving of the charge sua sponte was not error. *Sanders v. State*, 257 Ga. 239, 243 (7) (357 SE2d 66) (1987); *Short v. State*, 256 Ga. 172, 174 (5) (345 SE2d 344) (1986).

4. Defendant contends that his sentence violated the Sixth, Eighth, and Fourteenth Amendments to the Federal Constitution in that it was disproportionate to the offenses committed. He received fifteen years to serve for assault on a peace officer with a deadly weapon and five years probation to follow for possession of a firearm during commission of a felony.

Generally, a sentence will not be reviewed by this court if it is within the statutory limit. *Branch v. State*, 182 Ga. App. 818, 819 (3) (357 SE2d 136) (1987). "Questions concerning the severity of a sentence, within legal limits, should be addressed to the sentence review panel. *Tommie v. State*, 158 Ga. App. 216 (1) (279 SE2d 510)." *Lanzo v. State*, 187 Ga. App. 616, 619 (7) (371 SE2d 119) (1988). Considering the circumstances, the sentence does not succumb to the Federal

Constitutional claim. It is not grossly disproportionate so as to constitute cruel and unusual punishment. *Rummel v. Estelle*, 445 U. S. 263, 274 (100 SC 1133, 63 LE2d 382) (1980). Compare *Solem v. Helm*, 463 U. S. 277 (103 SC 3001, 77 LE2d 637) (1983).

*Judgment affirmed. Banke, P. J., and Birdsong, J., concur.*

DECIDED MARCH 9, 1989.

*Carl P. Greenberg, J. M. Raffauf*, for appellant.

*Robert E. Wilson*, District Attorney, *Elisabeth MacNamara, Robert M. Coker, John H. Petrey*, Assistant District Attorneys, for appellee.