## A97A2060. WILSON v. THE STATE.
### (496 SE2d 746)

Andrews, Chief Judge.

Albert Wilson, convicted of one count of child molestation, appeals following the trial court's denial of his motion for new trial.

Wilson was charged with three counts. The first two charged child molestation,[1] and Count 3 charged aggravated child molestation[2] of N. H., who was thirteen years old at the time of the incidents. The jury found Wilson not guilty of the first two counts and guilty of child molestation as a lesser included crime of Count 3.

1. We consider Wilson's third enumeration, claiming insufficiency of the evidence, first. In so doing, we view all the evidence in the light most favorable to the verdict, keeping in mind that an appellate court does not weigh the evidence or determine witness credibility, but only determines the legal sufficiency of the evidence under the standard of *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). *Brewer v. State,* 219 Ga. App. 16, 17 (1) (463 SE2d 906) (1995).

So viewed, the evidence was that Wilson had been involved with and eventually married N. H.'s mother in 1989. Initially, he believed that N. H. was his daughter. In fact, N. H. was not his child. Although N. H. was told when she was five years old that Wilson was not her biological father, she grew up calling him "Daddy." Wilson and his wife attended a "holiness doctrine" church and believed in strict discipline for their children. N. H. began running away from home in the fourth grade because, according to her, she was tired of her parents fighting. During the intervening years before 1995, she ran away five to ten times.

N. H. shared a bedroom with her four-year-old sister. She stated that, beginning in February 1995, Wilson began coming into the bedroom and committed the following acts over several months. He got

---

[1] Count 1 alleged that Wilson placed his penis on N. H.'s vagina, and Count 2 alleged he placed his hand on her vagina.

[2] The third count alleged Wilson placed his mouth on the child's vagina.

into her bed, took down her pants, and "tried to stick it in," returning later to tell her she could not tell anybody because Anthony Murphy "from our old church had put a voodoo doll on him and made him do it." When her stepbrother Sidney was in the hospital and Mrs. Wilson was staying overnight with him, Wilson pulled her into his bedroom and tried to do it again, ejaculating on her stomach which she described as like watered down milk. He told her that was how you got pregnant. Another time, while her mother was gone, Wilson pulled her into his bedroom and started talking about a scar he had on his penis which he tried to make her look at. He said it had been caught in a zipper when he was a child. He also tried to get her to lick something off his penis and, finally, attempted anal sex with her. She told her mother about the abuse while they were out of town for a relative's funeral, and her mother said she would talk to Wilson, but she did not.

In September 1995, after the last incident and after Wilson had slapped her in the face for leaving her siblings alone in the house, N. H. jumped out a second story window and ran away again. She rode to the end of a MARTA bus line and approached a stranger's house. She refused to return home, and the police were called, resulting in this prosecution.

N. H. was examined by a pediatrician on September 9, several days after the last alleged act. She stated that N. H. was premenstrual and, while there was a "notch" in N. H.'s hymen which could be consistent with her history of abuse, it also could be consistent with a number of other explanations.

Although the jury found Wilson not guilty of placing his penis and hand on N. H.'s vagina, there was sufficient evidence to convict him of child molestation based on his showing his penis to her, his attempt at anal sodomy, and his attempt to get her to lick his penis. Mrs. Wilson, who verified the scar and said it was from a zipper, had not told N. H. about it. *Jackson v. Virginia*, supra.

Wilson testified, acknowledging that he had a scar on his penis which he said was from circumcision, but denied all other acts of abuse. " 'It is the prerogative of the jury to accept the defendant's statement as a whole, or to reject it as a whole, to believe it in part, or disbelieve it in part. In the exercise of this discretion they are unlimited. Furthermore, the credibility of witnesses and the resolution of such conflicts are for the jury. . . .' [Cit.]" *Washington v. State*, 225 Ga. App. 262, 263 (1) (483 SE2d 683) (1997).

2. The second enumeration is that the court "erred by answering a jury question that the court did not understand."

The jury began deliberations at 1:00 p.m., and the jury asked at 2:42 p.m. if they could review the videotape of N. H.'s interview by the Georgia Center for Children and have a transcript of Mrs. Wil-

son's testimony, but the court denied this request. At 2:50 p.m., the jury reported that without the replay or transcripts, it was deadlocked. The court instructed the jury to continue deliberating. At 4:54 p.m., the court sua sponte gave the "dynamite" charge contained in Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, pp. 156-157.[3] The jury then asked the following question: "Regarding Count 3, if we reduce the charge from aggravated child molestation to child molestation, does a specific act of child molestation have to be identified? In other words, can the count be stated, 'did an immoral and indecent act to [N. H.], a child under 14 years of age, with intent to arouse and satisfy the sexual desires of said accused, period? The period here is important to us." After discussion with the prosecutor and counsel for Wilson, it was agreed that "[t]he answer is no." The court then told the jury "if the eventual interpretation of what the question means is in the return of your verdict do you have to specify an act, the short answer is no."

The jury was then excused for the evening and began deliberations again the next morning, asking if they could leave the other two counts undecided at 11:45 a.m., and returning the guilty verdict on the lesser included charge in Count 3 at 12:34 p.m.

Our consideration of this enumeration is precluded by the fact that Wilson's counsel acquiesced in the court's actions, and we will not consider this objection for the first time here. *Height v. State*, 214 Ga. App. 570, 571 (2) (448 SE2d 726) (1994).

3. The final enumeration is that the trial court erred when it charged the jury that Wilson "may be acquitted of aggravated child molestation and convicted of the lesser included offense of child molestation."

The charge conference is not included in the record here, and there were no written requests to charge by Wilson. Wilson's trial counsel, who testified at the motion for new trial hearing, believed that the jury was authorized to consider child molestation as a lesser included offense of aggravated child molestation. He therefore voiced no objection when the now objected-to charge was given.

Child molestation is, by definition, a lesser included offense of aggravated child molestation as a matter of law. OCGA §§ 16-6-4 (c); 16-1-6 (2).

Pretermitting the issue of the lack of objection at trial and assuming that the court's charge on the lesser included offense was given sua sponte, there has been no showing by Wilson of the required abuse of discretion in giving the charge which would consti-

---

[3] This charge has been approved in *Ratcliff v. Ratcliff*, 219 Ga. 545 (134 SE2d 605) (1964) and *Spaulding v. State*, 232 Ga. 411, 413 (4) (207 SE2d 43) (1974). *Christian v. State*, 190 Ga. App. 667, 670 (3) (379 SE2d 807) (1989).

tute harmful error. *Glisson v. State*, 165 Ga. App. 342, 343 (6) (301 SE2d 62) (1983); see *Terry v. State*, 224 Ga. App. 157, 161 (4) (480 SE2d 193) (1996).

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED JANUARY 15, 1998.

*Herbert Adams, Jr.*, for appellant.

*J. Tom Morgan*, District Attorney, *Lee A. Mangone, Robert M. Coker*, Assistant District Attorneys, for appellee.