544 S.E.2d 472 (2001)
248 Ga. App. 366
BROWNLOW
v.
The STATE.
No. A00A1868.
Court of Appeals of Georgia.
January 8, 2001.
Reconsideration Denied March 2, 2001.
Certiorari Denied June 25, 2001.
*473 Smith, Price & Wright, Charles G. Price, Rome, for appellant.
Tambra P. Colston, District Attorney, C. Stephen Cox, Assistant District Attorney, for appellee.
ANDREWS, Presiding Judge.
A Floyd County jury convicted Herschell Ed Brownlow of two counts of child molestation and two counts of aggravated sexual battery. On appeal, Brownlow claims the verdict was inconsistent with the evidence and that the trial court erred (1) in allowing expert testimony that the alleged victims exhibited symptoms consistent with child sexual abuse accommodation syndrome and major depressive disorder consistent with children who have suffered child abuse, (2) in charging the jury on child molestation as a lesser offense of aggravated child molestation, and (3) in refusing to allow an evidentiary hearing regarding juror misconduct.
Brownlow's two grandsons, C.M. and C.T., often stayed overnight in a camper parked in Brownlow's yard. C.T. testified that at night in the camper Brownlow had "[s]tuck his finger up my privacy part in the back." He also testified that Brownlow had bitten his "privacy part" in front, and that Brownlow had done the same to C.M. C.T. said that Brownlow had taken pictures of him while he was in the shower and had inserted pliers in his anus. The abuse allegedly occurred while C.T. was between three and six years of age. He was seven years old when he testified at trial.
C.M. also testified at Brownlow's trial. C.M. was thirteen years old when he testified and, according to the indictment, between nine and twelve years old at the time of the alleged abuse. C.M. said that Brownlow had "touched my butt" with his hand on several occasions. C.M. had observed Brownlow touching C.T. on the butt and on his "ding-a-ling" both on top of and underneath C.T.'s *474 clothing. C.M. had also touched C.T.'s penis at the direction of Brownlow.
1. Brownlow argues that the evidence presented at trial was not sufficient to authorize a jury to convict him of the offenses charged. In support of this claim, he points out that the testimony of C.T. and C.M. was contradictory and inconsistent. Nevertheless,
that some evidence offered by a witness seems contradictory to his own or to some other's, or incomplete or uncertain, does not automatically discredit the evidence given by that witness for it is the function of the triers of fact to determine to what evidence it gives credence. It is not for us to determine or question how the jury resolved any apparent conflicts or uncertainties in the evidence.
(Citations and punctuation omitted.) Royal v. State, 217 Ga.App. 459, 460(1), 458 S.E.2d 366 (1995). After a thorough review of the record, we find that the evidence was sufficient to authorize a rational trier of fact to find Brownlow guilty beyond a reasonable doubt of the offenses for which he was convicted. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
2. (a) Brownlow claims the trial court erred in allowing expert testimony that the children exhibited symptoms consistent with sexual abuse. A clinical psychologist interviewed C.M., and she also observed a police sergeant interview C.T. During these interviews, C.T. and C.M. denied being sexually abused. A few days after C.M. spoke with the clinical psychologist, C.M. told his parents that he had been sexually abused by Brownlow, causing C.M.'s parents to arrange for a second interview. During the second interview, C.M. reported that Brownlow had inserted a finger in his anus. Each of the above-mentioned interviews was videotaped, and the videotapes of the interviews were introduced into evidence and played for the jury.
The clinical psychologist testified as an expert witness. The prosecutor questioned her about sexual abuse accommodation syndrome, which the psychologist described as "a model for understanding the ways that children experience sexual abuse and how that impacts their disclosure process." The State then questioned the psychologist:
Q Okay. I'll ask you, in your expertise, do you have an opinion as to whether or not either [C.M.] or [C.T.] exhibit symptoms consistent with child sexusexual abuse accommodation syndrome? And again, the question is do they exhibit symptoms, charconsistent with the concept?
A Based on my understanding of the history of this case, as well as just this sample of the interviews that we saw, those behaviors of denying and then restating a disclosure are consistent with sexual abuse accommodation syndrome as I described it.
A psychiatrist also testified as an expert witness. She treated both C.T. and C.M. The psychiatrist diagnosed C.T. with a major depressive disorder. She also testified that C.T. manifested traits that were consistent with children that had alleged sexual abuse, including "excessive anxiety, inappropriate guilt, extreme irritability, and mood instability... [and] excessive nightmares." The psychiatrist diagnosed C.M. with a depressive disorder, an adjustment disorder, and an adjustment disorder with anxiety.
Brownlow argues that the clinical psychologist and the psychiatrist impermissibly bolstered the credibility of C.T. and C.M. and spoke to the ultimate issue of whether the children were sexually abused. In considering a comparable issue in Odom v. State, 243 Ga.App. 227, 228(1), 531 S.E.2d 207 (2000), we explained that:
What is forbidden is expert opinion testimony that "directly addresses the credibility of the victim," i.e., "I believe the victim; I think the victim is telling the truth," or expert opinion testimony that implicitly goes to the ultimate issue to be decided by the jury, when such issue is not beyond the "ken" of the average juror, i.e., "In my opinion, the victim was sexually abused." Although the distinction may seem fine to a layman, there is a world of legal difference between expert testimony that "in my opinion, the victim's psychological exam was consistent with sexual abuse," and expert testimony that "in my opinion, the victim was sexually abused." In the first *475 situation, the expert leaves the ultimate issue/conclusion for the jury to decide; in the second, the weight of the expert is put behind a factual conclusion which invades the province of the jury by providing a direct answer to the ultimate issue: was the victim sexually abused?
(Citations omitted.)
Applying the foregoing principles, we find that the clinical psychologist did not give impermissible testimony when she gave her professional opinion that C.T. and C.M. exhibited symptoms "consistent" with sexual abuse accommodation syndrome. She did not testify that she believed C.T. or C.M. was telling the truth or that they were sexually abused. Similarly, the psychiatrist's testimony that C.T. showed traits consistent with sexual abuse and that she initially diagnosed C.M. with a depressive disorder did not impermissibly address the ultimate issue before the jury or the credibility of the children.
(b) Brownlow also claims the trial court impermissibly allowed the clinical psychologist to opine indirectly that Brownlow had sexually abused C.T. and C.M. through the following testimony: "In a case such as this one, when a perpetrator is someone who is close to the child and someone that the child counts on for good things, for pro." This testimony was given as part of a lengthy response to a request by the State to explain the concept of child sexual abuse accommodation syndrome. In its context, given the question and the testimony both before and after the language at issue, the psychologist's testimony is most fairly seen as an attempt to explain child abuse accommodation syndrome to the jury rather than an impermissible opinion on an ultimate issue.
3. (a) Brownlow claims the trial court abused its discretion when it instructed the jury, at the request of the State and over his objection, on child molestation as a lesser included charge of aggravated child molestation. The jury charge originally addressed aggravated child molestation. After a recharge on aggravated child molestation, the jury was returned to the jury room without a charge on the lesser count, but the trial court immediately brought the jury back into the courtroom and instructed them that child molestation was a lesser included offense of aggravated child molestation and that they were authorized to find Brownlow guilty of the lesser offense if they did not find him guilty of aggravated child molestation but found him to be guilty of child molestation beyond a reasonable doubt.
A trial court is authorized to charge the jury on a lesser included offense so long as the charge is supported by the evidence, see Gagnon v. State, 240 Ga.App. 754, 755-756(1), 525 S.E.2d 127 (1999), and the indictment sufficiently places the defendant on notice of the crimes which he must defend.[1]Heggs v. State, 246 Ga.App. 354, 540 S.E.2d 643 (2000). See also McCrary v. State, 252 Ga. 521, 523, 314 S.E.2d 662 (1984).
Child molestation is necessarily a lesser included offense of aggravated child molestation. Wilson v. State, 230 Ga.App. 195, 197(3), 496 S.E.2d 746 (1998); OCGA § 16-6-4. The difference between child molestation and aggravated child molestation is that aggravated child molestation includes an act of child molestation which injures the child or involves sodomy. OCGA § 16-6-4(c). The indictment charges Brownlow with aggravated child molestation which includes the elements required to prove the lesser crime of child molestation. The indictment afforded Brownlow sufficient notice of the conduct which he must defend at trial.
The evidence supports a finding that Brownlow committed two counts of child molestation. C.T. testified that Brownlow "bit" C.T.'s "front privacy" while C.T.'s pants were on. C.T. also testified that Brownlow had placed his penis on his butt while C.T. was wearing boxer shorts. This testimony would support a finding of child molestation. See *476 Knight v. State, 239 Ga.App. 710, 713(3), 521 S.E.2d 851 (1999). And while this testimony would have also authorized the jury to find aggravated child molestation of C.T. by acts of molestation accompanied by sodomy, see Holland v. State, 209 Ga.App. 821, 823, 434 S.E.2d 808 (1993), the jury would not be precluded from finding that Brownlow molested C.T. on these occasions without having completed an act of sodomy.
The authorities cited by Brownlow, such as Bailey v. State, 209 Ga.App. 390, 395(7), 433 S.E.2d 610 (1993), and Helton v. State, 217 Ga.App. 691, 694(5), 458 S.E.2d 872 (1995), are distinguishable. In these decisions, the issue on appeal was the trial court's refusal to charge on a lesser included offense rather than the trial court's decision to give such a charge. And, unlike here, we found that the evidence did not authorize a finding of the lesser included offense.
(b) During the recharge, the court instructed the jury:
Now, if you should find the defendant guilty beyond a reasonable doubt of aggravated child molestation, the form of your verdict would be guilty. If you do not believe beyond a reasonable doubt that the defendant did commit the offense of child molestation by doing any immoral or indecent act to or in the presence of any child under the age of sixteen with the intent to arouse or satisfy the sexual desires of either the child, then ityou wouldyou could find him, if you find that beyond a reasonable doubt, guilty of the lesser offense.
While we would agree that the trial court made a "slip of the tongue" while giving this portion of the instruction, the charges to the jury on aggravated child molestation and child molestation are clear and correct when reviewed as a whole. See Turner v. State, 241 Ga.App. 431, 437(6), 526 S.E.2d 95 (1999). A reversal is not required.
4. Brownlow claims that the trial court erred in refusing to allow an evidentiary hearing on his allegations of juror misconduct. At his motion for new trial, Brownlow introduced the affidavit of a third party stating that a juror was a close friend of a board member of Harbor House, a children's advocacy center. A State witness, the clinical psychologist, was a director of Harbor House. Brownlow maintains that, because of the juror's relationship with the Harbor House board member, the juror would be likely to resolve any conflicts in the evidence in favor of witnesses who were connected with Harbor House. He also claims that, had he known that the juror had been friends with a Harbor House director, he would have had a basis to strike her for cause. We find no merit in these arguments.
Even if Brownlow's proffer of third-party testimony was, upon the conduct of an evidentiary hearing, found to be true, the juror's friendship with a Harbor House director would not disqualify her. The juror's friend did not testify at trial, nor was he involved in or mentioned in the proceedings. Brownlow argues that an issue remains as to why the juror failed to disclose the relationship in voir dire and whether this relationship influenced her deliberations in the case. However, there were no questions asked in voir dire which would have required the juror to disclose a friendship with a Harbor House director. In particular, Brownlow complains of the juror's failure to respond when the jury was asked: "Are any of you now serving on any committees or boards or advisory panels for any type of juvenile court matter or any type ofmaybe even on the Harbor House board or anything like that involvinginvolving children?" Though in response to this question another member of the jury pool volunteered that her husband was a vice-president of Harbor House, we do not believe that the failure to respond on the part of the juror in question amounted to an untruthful answer. As the juror's alleged friendship with a Harbor House director would not have established cause to grant Brownlow a new trial, the trial court was not required to hold a hearing to investigate the matter further.
Judgment affirmed.
RUFFIN and ELLINGTON, JJ., concur.
NOTES
[1] Count 1 of the indictment provided that, "The accused did place his penis in the anus of [C.T.], to and in the presence of and with [C.T.], a child under 16 years of age, with the intent to arouse and satisfy the sexual desires of said accused and said child, said act involving an act of sodomy...." Count 2 of the indictment provides that, "The accused did place his mouth on the penis of [C.T.], to and in the presence of and with [C.T.], a child under 16 years of age, with the intent to arouse and satisfy the sexual desires of said accused and said child...."