A06A2051. HOWARD v. THE STATE.
(637 SE2d 448)

BLACKBURN, Presiding Judge.

Following a jury trial, Carl Howard appeals his convictions for rape, incest, aggravated sodomy, aggravated sexual battery, and aggravated child molestation (two counts). Howard argues that the trial court erred in (i) denying his special demurrer that focused on the lack of a specific date for the crimes, (ii) admitting expert testimony on child sexual abuse syndrome, (iii) denying his motion for a directed verdict of acquittal on the rape charge, (iv) failing to merge the incest and rape charges and the aggravated sodomy and aggravated child molestation charges, and (v) sentencing Howard for terms outside the statutory maximums. He further asserts he received ineffective assistance of counsel. We agree with Howard that due to the absence of any showing of force, the rape conviction should be reversed and that (as conceded by the State) resentencing is necessary on two of the other convictions to conform to statutory maximums. Howard's other enumerations of error are either waived or without merit.

---

Construed in favor of the verdict, see *Matthiessen v. State*,[1] the evidence shows that during the last two weeks of February 2003, 24-year-old Howard convinced his 15-year-old half-sister to engage in sexual intercourse with him, to perform oral sex on him, and to allow him to perform oral sex on her. He also inserted his finger into her private part. When his sister later disclosed these events to others, Howard was arrested and charged with rape, incest, aggravated sodomy, aggravated sexual battery, and two counts of aggravated child molestation. A jury found him guilty on all counts. During sentencing, the judge orally merged the aggravated sodomy count into the related aggravated child molestation count and sentenced Howard to 20 years on the rape count and to 25 years on each of the remaining counts (all sentences to be served concurrently). Although otherwise consistent with the oral sentence, the written sentencing order merged the aggravated sodomy count into the rape count rather than into the aggravated child molestation count. Howard appeals.

1. Howard first claims that the trial court erred in denying his special demurrer, in which Howard sought to quash the indictment for failure to identify specific dates for the alleged crimes. The indictment alleged that the sexual misconduct occurred between November 5, 2002 and February 28, 2003. At the hearing on the special demurrer (three months prior to trial), the State presented no evidence but simply told the trial court that it could not give more specific dates, on which statement the court relied in denying the special demurrer. Nevertheless, in the similar transaction hearing that took place that same day immediately following the special demurrer hearing, the State put the victim on the stand, who testified that the sexual misconduct occurred only during the latter half of February 2003.

The indictment here, which failed to allege a specific date on which each of the crimes was committed, was not perfect in form and therefore was subject to a timely special demurrer. *Blackmon v. State*.[2] Although this Court has recognized an exception to this rule where the evidence does not permit the State to identify a single date on which the offense occurred, the exception does not apply unless the State first presents evidence to the trial court showing that it cannot more specifically identify the dates of the offenses. Id. at 854-855. Indeed, on the heels of the special demurrer hearing, the State showed just the opposite, as the victim identified the latter part of February as the time frame during which the offenses occurred. Where the State's own evidence shows that the State reasonably

[1] *Matthiessen v. State*, 277 Ga. App. 54 (625 SE2d 422) (2005).
[2] *Blackmon v. State*, 272 Ga. App. 854 (614 SE2d 118) (2005).

could narrow the range of dates, a special demurrer should be granted. *State v. Layman.*[3]

However, we are not reviewing a pre-trial interlocutory appeal of a trial court's denial of a special demurrer; rather, we are reviewing a post-conviction appeal of the trial court's pre-trial ruling, which is subject to a different standard of review. See *Blackmon,* supra, 272 Ga. App. at 854. In these circumstances, "the standard of review occasioned by the trial court's denial of a special demurrer is harmless error; the question then becomes whether the defense was prejudiced by the incorrect form." *City of Peachtree City v. Shaver.*[4] Specifically, "[t]he relevant inquiry is whether the failure to narrow the range of dates alleged in the indictment materially affected [Howard's] ability to present a defense." (Punctuation omitted.) *Holloway v. State.*[5]

As in *Holloway,* Howard claims that due to the lengthy period set forth in the indictment, he was not able to adequately investigate and prepare a possible alibi defense. But also as in *Holloway,* Howard has not demonstrated that narrowing the dates in the indictment would have enabled him to present an alibi defense. Id. Moreover, the victim's testimony at the similar transaction hearing three months prior to trial gave Howard clear notice of the February 2003 time frame in which the misconduct allegedly occurred. Where the defendant was aware of the correct information (though misstated in the indictment), the error in the indictment is manifestly harmless. *State v. Eubanks.*[6]

2. Howard contends that the trial court erred in admitting testimony about child sexual abuse syndrome, in which an expert testified that a child sexual abuse victim is often "groomed" by the abuser so as to trust the abuser, which makes the child more accommodating and less willing to disclose the sexual abuse to others. Howard objected to this testimony at trial as irrelevant and as placing his character in issue. However, this testimony was relevant here to explain the victim's accommodating Howard and to explain why she waited some time before disclosing the incidents. See *McCoy v. State*[7] ("Georgia courts . . . have long allowed testimony regarding child sexual abuse syndrome" to explain "secrecy, delayed disclosure, helplessness, and accommodation."). Accordingly, the testimony was

---

[3] *State v. Layman,* 279 Ga. 340, 341-342 (613 SE2d 639) (2005).

[4] *City of Peachtree City v. Shaver,* 276 Ga. 298, 301 (578 SE2d 409) (2003).

[5] *Holloway v. State,* 278 Ga. App. 709, 711 (1) (629 SE2d 447) (2006).

[6] *State v. Eubanks,* 239 Ga. 483, 489 (238 SE2d 38) (1977).

[7] *McCoy v. State,* 278 Ga. App. 492, 493-494 (3) (629 SE2d 493) (2006).

admissible even if it may have incidentally placed Howard's character in issue. See *Parrish v. State*.[8]

3. Howard argues that the trial court erred in denying his motion for a directed verdict of acquittal on the rape charge, in that the State presented no evidence of force as required by OCGA § 16-6-1. We agree and reverse the conviction on this charge.

In addressing this matter, we apply the following standard of review:

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. A motion for a directed verdict in a criminal case should only be granted when there is *no conflict* in the evidence and the evidence demands a verdict of acquittal as a matter of law. Moreover, on appeal the evidence must be viewed in the light most favorable to the verdict, [Howard] no longer enjoys the presumption of innocence, and the appellate court determines the sufficiency, not the weight of the evidence, and does not judge the credibility of the witnesses.

(Emphasis in original.) *Matthiessen*, supra, 277 Ga. App. at 54. See OCGA § 17-9-1. "[W]here the evidence demands a verdict of acquittal[,] the failure of a trial judge to so direct a verdict is reversible error." *Cleveland v. State*.[9]

OCGA § 16-6-1 provides in pertinent part that "[a] person commits the offense of rape when he has carnal knowledge of [a] female forcibly and against her will." Force is a separate element that must be proven to obtain a conviction for forcible rape. *State v. Collins*.[10] "[T]he term 'forcibly' means acts of physical force, threats of death or physical bodily harm, or mental coercion, such as intimidation." Id. at 43.

Here, as in *Brewer v. State*,[11] "the victim repeatedly denied every suggestion of physical force, threats, and intimidation." She testified:

> Q. Okay. Tell us about the first time you remember you-all having sexual contact. What happened; how did it come about?
> A. We were wrestling.
> Q. Okay.

---

[8] *Parrish v. State*, 237 Ga. App. 274, 277 (2) (i) (514 SE2d 458) (1999).

[9] *Cleveland v. State*, 155 Ga. App. 267 (1) (a) (270 SE2d 687) (1980).

[10] *State v. Collins*, 270 Ga. 42 (508 SE2d 390) (1998).

[11] *Brewer v. State*, 271 Ga. 605, 607 (523 SE2d 18) (1999).

A. And then we began to talk, and that's how it started out.

Q. Do you recall what y'all were talking about?

A. We were talking about his previous girlfriends and the things that he do with his girlfriends.

Q. And what type of things was he saying about he did with his previous girlfriends?

A. He was just saying that I — that he knew I wondered what he did with his girlfriends and that if — he could teach me some stuff.

Q. And then what happened?

A. And then he just started talking. We was just — it was more of like a convincing thing to do something.

Q. Convincing, like what? What was he saying?

A. Do you want an example?

Q. I want you to tell me what he said.

A. Oh. Like one thing, he was like, he's like, "I know you wanna do something." I was like, "Well, you're my brother." And he was like, "Well, you can learn from me because I'm your brother than you going out and doing it with somebody else."

. . .

Q. [After some inappropriate touching, w]hat happened next?

A. And then eventually after a lot of talking, then I eventually took my clothes off and did what he wanted me to do.

. . .

Q. Did you want to have sex with him that day?

A. Not really, but I did it anyway.

Q. Why did you do it?

A. Because one part of me was convinced to do it. Another part of me wanted to make my brother happy, and I didn't want to make him mad.

Q. Why didn't you want to make him mad?

A. Because I thought he wasn't gonna talk to me no more and that was gonna affect our relationship. And I was like trying to build a relationship with my brother, not make it bad.

. . .

Q. What was going on before y'all — before he talked to you about oral sex?

A. After the first day, it just became something that when my grandmother and grandfather wasn't at home, it was like something that was expected.

Q. Did you ever tell him that you didn't want to perform oral sex or you didn't want him to do it to you?

A. No. I never looked at "no" as an option.

Q. Why didn't you ever look at "no" as an option?

A. Because like after a while, I just thought that it was just something that was gonna just keep going.

The victim expressly denied that Howard used any sort of physical force before or during any of the encounters.

The above demonstrates that Howard did nothing more than talk his 15-year-old sister into engaging in sexual relations with him. Indeed, in describing the similarities between this event and the similar transaction the State introduced (involving a 13-year-old female who had loved Howard and who had willingly had sex with him), the State tellingly argued only that "he convinced both of these girls to have sex with him," not that he forced either one to have sex with him.

Contrary to the State's argument on appeal, no evidence shows that Howard used any sort of force such as mental coercion or intimidation to force his sister to engage in sexual intercourse with him. Mental coercion, such as intimidation, shows force " 'if the defendant's words or acts were sufficient to instill in the victim a reasonable apprehension of bodily harm, violence, or other dangerous consequences to herself or others.' " *Collins*, supra, 270 Ga. at 45. See *Roberts v. State*;[12] *Siharath v. State*[13] ("lack of resistance, induced by fear, is force, and may be shown by the victim's state of mind from her prior experience with the defendant and *subjective apprehension of danger from him*") (punctuation omitted; emphasis supplied). Nowhere in this testimony is there the slightest hint that the victim apprehended bodily harm, violence, or other dangerous consequences to herself or to others.[14] Under such circumstances, we are compelled

---

[12] *Roberts v. State*, 242 Ga. App. 621, 626 (4) (530 SE2d 535) (2000).

[13] *Siharath v. State*, 246 Ga. App. 736, 739 (2) (541 SE2d 71) (2000).

[14] The victim's treating physician did testify that the victim told him that Howard forced her to engage in oral sex. Beyond the fact that this did not pertain to the act of vaginal sexual intercourse which was the basis for the forcible rape charge here (OCGA § 16-6-1 refers to

to reverse the rape conviction. See *Minter v. State*[15] (rape conviction reversed where no force shown). Cf. *Brewer*, supra, 271 Ga. at 608 (aggravated sodomy conviction reversed where no force shown).

4. Howard next focuses on counts that he argues should have been merged as a matter of fact. First, he argues that because the victim testified to only one act of sexual intercourse, the incest count should have merged into the rape count. See *Love v. State*.[16] But, as he concedes in his brief, our reversal of the rape conviction moots this argument. Nevertheless, we vacate the sentence on the incest conviction and remand for resentencing for the reasons set forth in Division 5 below.

Second, he argues that the aggravated sodomy count should have merged into the related aggravated child molestation count, as both arose out of the same transaction. Specifically, the aggravated sodomy count alleged that Howard forced the victim to perform oral sex on him, and one of the aggravated child molestation counts alleged that he had her (a child under 16) perform oral sex on him. See *Johnson v. State*[17] ("since the single act of sodomy involving the child was necessary to prove aggravated child molestation and aggravated sodomy, the two convictions merge"). Recognizing this, the trial court at the sentencing hearing orally merged the two counts, but such was not reflected in the written sentence, which instead merged the aggravated sodomy count into the rape count. "[A] written sentence controls over the trial court's oral pronouncements." *Cook v. State*.[18]

On appeal, Howard seeks to have this mistake corrected, and the State agrees that such should be done, as such were multiple indictments of the same offense. Accordingly, the aggravated sodomy count (Count 5) is merged into the related aggravated child molestation count (Count 3). Cf. *Wilkerson v. State*.[19]

5. Howard contends that the court imposed sentences that exceeded the statutory maximums and urges that these sentences be vacated and that the case be remanded for resentencing. The State concedes the accuracy of Howard's position, and we agree.

A sentence that exceeds the maximum allowed by the controlling statute is void and must be vacated. See *Thomas v. State*[20] (" '[a]

---

vaginal intercourse, not to oral sex), even if it did, the doctor's testimony was hearsay (with no showing that it met any exception) and was therefore not probative. See *Roebuck v. State*, 277 Ga. 200, 204 (1) (586 SE2d 651) (2003) ("inadmissible hearsay lacks probative value even though the opposing party does not object to its introduction").

[15] *Minter v. State*, 245 Ga. App. 327, 329 (1) (537 SE2d 769) (2000).

[16] *Love v. State*, 190 Ga. App. 264, 265 (2) (378 SE2d 893) (1989).

[17] *Johnson v. State*, 276 Ga. 57, 58-59 (1) (573 SE2d 362) (2002).

[18] *Cook v. State*, 256 Ga. App. 353, 355 (2) (568 SE2d 482) (2002).

[19] *Wilkerson v. State*, 267 Ga. App. 585, 588 (2) (600 SE2d 677) (2004).

[20] *Thomas v. State*, 272 Ga. App. 279 (1) (612 SE2d 99) (2005).

sentence is void if the court imposes punishment that the law does not allow' "). See also *Kovacs v. State*[21] (" 'The total period of probation and confinement (if any) may not exceed the maximum time provided as punishment for the crime.' "). Here, the maximum sentence authorized for incest at the time the crimes were committed in February 2003 was 20 years. See former OCGA § 16-6-22 (b) (2003).[22] Similarly, the maximum sentence authorized for aggravated sexual battery in February 2003 was also 20 years. See former OCGA § 16-6-22.2 (c) (2003).[23] Accordingly, the court erred in sentencing Howard to 25 years on each of these counts. We must therefore vacate the sentences on the incest count (Count 4) and the aggravated sexual battery count (Count 6) and remand the case for resentencing on these two counts.

6. In his last enumeration of error, Howard argues that he received ineffective assistance of counsel when his trial counsel failed to renew the special demurrer, to object to hearsay testimony from the victim's physician, or to move for a directed verdict on the aggravated sodomy count. But Howard's first appellate counsel raised none of these claims of ineffective assistance in Howard's motion for new trial, even though that counsel argued ineffective assistance on other grounds. "Where the issue of trial counsel's effectiveness has been raised on motion for new trial, any claims of ineffective assistance by trial counsel not raised at that time are waived." (Punctuation omitted.) *Womack v. State*.[24] Such claims unasserted at the trial level are "procedurally barred." *Upshaw v. State*.[25]

Howard's attempt to raise this issue under the guise of an ineffective assistance of appellate counsel claim does not alter our conclusion.

> A defendant cannot resuscitate claims of ineffectiveness that are procedurally barred simply by bootstrapping them to a claim of ineffectiveness of appellate counsel. Once a claim is procedurally barred, there is nothing for this Court to review. To hold otherwise would eviscerate the rule requiring that ineffectiveness claims be raised at the earliest practicable moment.

---

[21] *Kovacs v. State*, 227 Ga. App. 870, 872 (3) (490 SE2d 539) (1997).

[22] OCGA § 16-6-22 was amended in 2006 to increase the maximum punishment for incest to 30 years. Ga. L. 2006, p. 379, § 14. But "the trial court was required to impose the sentence provided for by the law in force at the time the crime was committed." *Yates v. State*, 263 Ga. App. 29, 30 (2) (587 SE2d 180) (2003).

[23] OCGA § 16-6-22.2 was amended in 2006 to increase the maximum punishment for aggravated sexual battery to life. Ga. L. 2006, p. 379, § 16.

[24] *Womack v. State*, 273 Ga. App. 300, 307 (4) (614 SE2d 909) (2005).

[25] *Upshaw v. State*, 257 Ga. App. 199, 202 (4) (570 SE2d 640) (2002).

(Footnote omitted.) *Upshaw*, supra, 257 Ga. App. at 202. See *Godfrey v. State*;[26] *Brackins v. State*.[27]

In summary, we reverse the conviction on Count 1 (rape). We affirm the conviction and sentence on Count 2 (aggravated child molestation). We merge Count 5 (aggravated sodomy) into Count 3 (aggravated child molestation) and affirm the conviction and sentence on Count 3. We vacate the sentences on Count 4 (incest) and Count 6 (aggravated sexual battery) and remand the case with the instruction to resentence on these counts within the range of punishment allowed by law at the time these crimes were committed.

*Judgment affirmed in part, reversed in part and vacated in part, and case remanded with instruction. Mikell and Adams, JJ., concur.*

DECIDED OCTOBER 5, 2006.

*Charles H. Frier*, for appellant.
*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Assistant District Attorney*, for appellee.

---

[26] *Godfrey v. State*, 274 Ga. App. 237, 242 (2) (617 SE2d 213) (2005).
[27] *Brackins v. State*, 249 Ga. App. 788, 790 (3) (549 SE2d 775) (2001).