## A08A0416. MULLIS v. THE STATE.

(664 SE2d 271)

BERNES, Judge.

On appeal from his conviction for aggravated child molestation and child molestation, Robert Mullis argues that the evidence was insufficient to support his conviction. He also contends that the trial court erred in denying his motion to quash the indictment, in admitting certain testimonial evidence, and in clearing the courtroom during the victim's testimony. Finally, Mullis asserts that his trial counsel rendered ineffective assistance. We find no error and affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and the defendant no longer enjoys a presumption of innocence. *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the record shows that in 1995, the victim, then a nine-year-old child, lived at home with his mother and Mullis, his mother's boyfriend. Mullis began waking the victim during the night while the victim's mother worked by pulling down the victim's pants and putting the victim's penis in his mouth. Mullis often hit the victim and threatened to kill his mother if he told anyone of the abuse. Mullis also routinely forced the victim to put his mouth on Mullis's penis and to give and receive anal penetration. These assaults continued until the victim was 13.

Although the victim moved in with his biological father by 1999, Mullis continued to abuse the victim throughout the following year when the victim visited his mother, who by that time had married Mullis. Mullis and the victim's mother separated in September 2002, after which the victim told his mother about the abuse. The victim then made statements describing Mullis's attacks to officers of the Dodge County Sheriff's Office and Department of Family and Children Services. An examining physician later found that the victim lacked virtually all "anal tone," a condition consistent with multiple episodes of anal intercourse. Mullis was charged and subsequently convicted of two counts of aggravated child molestation and one count of child molestation. Mullis's motion for new trial was denied.

1. The evidence outlined above sufficed to sustain Mullis's conviction. See OCGA § 16-6-4 (a), (c) (defining child molestation and aggravated child molestation); *Berman v. State*, 279 Ga. App. 867, 869 (1) (632 SE2d 757) (2006) (victim's testimony was sufficient to sustain conviction for aggravated child molestation and child

molestation; any discrepancies in the evidence "presented credibility issues for the jury, not this Court, to resolve").

2. Mullis argues that the indictment was defective because it did not specify the dates on which the charged offenses occurred and instead alleged that the molestation occurred between August 1, 1991 and June 25, 2002.

On a post-conviction appeal from a trial court's pretrial denial of a motion to quash an indictment, the question is "whether the failure to narrow the range of dates alleged in the indictment materially affected [the defendant's] ability to present a defense." (Citation and punctuation omitted.) *Howard v. State*, 281 Ga. App. 797, 799 (1) (637 SE2d 448) (2006). Here, the victim, who was seventeen years old at trial, could recall only that the abuse began when he was "about nine years old," when his mother was working on a particular night shift, and that it ended when he was thirteen. The parties stipulated that the abuse had ended by the victim's sixteenth birthday.

"[W]here the evidence does not permit the [s]tate to identify a single date on which [an] offense occurred, the indictment instead may allege that the offense occurred between two particular dates." (Punctuation and footnote omitted.) *Berman*, 279 Ga. App. at 872 (6). Given Mullis's concessions that he lived with the victim for much of the time between 1995 and 1999 and that the victim visited the house regularly thereafter, Mullis cannot show that he was prejudiced in the preparation of his defense by the indictment's range of dates concerning its three counts. This argument thus lacks merit. See *Howard*, 281 Ga. App. at 799 (1) (rejecting post-conviction attack on indictment for child molestation which gave dates between which the acts of molestation occurred).

3. Mullis complains of various statements elicited from the state's psychologist. The psychologist was qualified as an expert without objection and testified about the effects of child abuse on the subjects of that abuse.

(a) First, Mullis asserts that the trial court erred in allowing the psychologist to testify about the methods that he used to evaluate and assess the victim. The psychologist explained that he had evaluated the victim using eleven different tests, eight of which had a proven scientific basis, and the other three of which were developed in the course of his clinical experience for the purpose of identifying "symptom patterns" associated with child sexual abuse. Based upon his evaluation, he concluded that the results were consistent with the state's theory of the case. The trial court authorized extensive cross-examination concerning each of the tests used by the psychologist, including the extent to which the psychologist was basing his opinion on each test. The trial court did not err when it allowed the

psychologist to explain his conclusions based on tests developed either in the scientific community or from his own clinical experience. See *Dean v. State*, 252 Ga. App. 204, 205-206 (2) (555 SE2d 868) (2001) (medical expert was not required to testify with a reasonable degree of medical certainty that child's injuries were caused by charged molestation).

(b) Mullis next argues that the trial court erred in allowing the psychologist to testify that the victim's symptoms and accounts were "highly consistent" with sexual abuse.

> Under Georgia law, a psychologist . . . can offer expert testimony that symptoms exhibited by a child are consistent with sexual abuse. And the fact that such testimony may also indirectly, though necessarily, involve the child's credibility does not render it inadmissible.

(Punctuation and footnote omitted.) *Rogers v. State*, 253 Ga. App. 675, 677 (2) (560 SE2d 286) (2002). This testimony was therefore admissible. See *Brownlow v. State*, 248 Ga. App. 366, 367-368 (2) (a) (544 SE2d 472) (2001); *Odom v. State*, 243 Ga. App. 227, 228 (1) (531 SE2d 207) (2000) (psychologist's testimony concerning consistency of symptoms with sexual abuse was admissible and did not go to ultimate issue).

(c) Mullis next challenges the psychologist's opinion that a person with the victim's level of intelligence would have difficulty fabricating a detailed fictional account of abuse. The psychologist explained that the victim had a composite IQ score of 74, merely five points above what is considered mentally retarded. When Mullis objected to the psychologist's statement, the trial court allowed it, but admonished the psychologist not to give his opinion as to the ultimate issue of the victim's credibility. Because the trial court was authorized to conclude that one's ability to manufacture stories of abuse based upon his or her IQ level fell beyond the ken of the average juror, the challenged testimony was admissible. See *In the Interest of B. H.*, 190 Ga. App. 131, 133-134 (3) (378 SE2d 175) (1989) (allowing opinion testimony that a child of the victim's age would have difficulty making up a story of abuse). See also *Eberhardt v. State*, 257 Ga. 420, 422 (4) (359 SE2d 908) (1987) (holding expert testimony proper as to whether a mentally ill victim was capable of distinguishing fact from fiction); *Howell v. State*, 278 Ga. App. 634, 643-644 (8) (629 SE2d 398) (2006) (noting that expert opinion testimony on an issue that goes beyond the ken of the average juror is admissible, even if it indirectly comments on the victim's credibility).

(d) Finally, Mullis challenges the testimony from the psychiatrist concerning the victim's previous diagnosis as a schizophrenic. This testimony, however, was elicited by Mullis on cross-examination. Any error in its admission was thus induced and has been waived on appeal. See *Sams v. State*, 239 Ga. App. 715, 717 (3) (521 SE2d 848) (1999).

4. Mullis challenges certain testimony of the police investigator in which he referred to a diagnosis of the victim made by a person not appearing at trial, and also challenges testimony from the physician in which she referred to the results of the victim's stool culture. This challenged testimony was also elicited by Mullis on cross-examination. Thus, any error in its admission has been waived. *Sams*, 239 Ga. App. at 717 (3).

5. Mullis contends that the trial court erred in allowing the police investigator to testify that a child the victim's age would not want to admit to having been anally penetrated. Because Mullis made no objection at trial, this contention has been waived as well. *Slaughter v. State*, 282 Ga. App. 276, 279 (2) (638 SE2d 417) (2006).

6. Mullis also argues that the trial court abused its discretion and deprived him of his Sixth Amendment right to a public trial when it cleared the courtroom during the victim's testimony. We disagree.

In *Waller v. Georgia*, 467 U. S. 39 (104 SC 2210, 81 LE2d 31) (1984), the United States Supreme Court held that a trial court's grant of a prosecutorial motion to close a suppression hearing to the public was error mandating a new trial.

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

(Citation omitted.) Id. at 45 (II) (A). In order to obtain closure of an otherwise public proceeding,

> the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

Id. at 48 (II) (B). And as the Supreme Court of Georgia has noted,

> [a] violation of one's right to a public trial is structural error. Structural error is a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. As such, structural errors are not subject to harmless error analysis.

(Citations and punctuation omitted.) *Berry v. State*, 282 Ga. 376, 378-379 (3) (651 SE2d 1) (2007), quoting *Hunt v. State*, 268 Ga. App. 568, 570-571 (1) (602 SE2d 312) (2004).

The victim in this case was 17 years old at the time of trial, and thus too old to come under the protections of OCGA § 17-8-54 (trial court may exclude the public from criminal proceedings involving sexual offenses during testimony of witness under the age of 16). Nonetheless, the state presented evidence during the trial of the profound emotional and psychological impact that Mullis's abuse had on the victim, to the extent that, at one point, he had been diagnosed with schizophrenia. He had also failed out of school and been held back at least one grade before his outcry. Once the abuse was discovered and ceased, the behavioral problems that had led to the diagnosis of schizophrenia subsided and the victim became an A and B student.

The state advocated the closing of the courtroom to nonessential personnel during the victim's testimony because of the obvious severe psychological impact that the events had on the victim and out of fear that requiring him to recall the trauma that he suffered in front of numerous people, including strangers, would cause him unnecessary harm. The state further expressed concern that the victim would not be as open with the jury if he was required to recount the events in front of a full courtroom.

The trial court expressly considered the *Waller* factors and exercised its discretion to close the courtroom. In so doing, it adopted the state's concern that, in light of the victim's fragile emotional and psychological history, the victim might be subjected to unnecessary harm — beyond mere shame — if required to testify in front of a full courtroom. The trial court further limited its ruling to the victim's testimony and the courtroom was immediately reopened after the victim testified. Under these circumstances, the temporary and limited closure of the courtroom was authorized. See, e.g., *Sears v. State*, 182 Ga. App. 480, 483 (8) (356 SE2d 72) (1987) (trial court did not abuse its discretion when it cleared the courtroom during the testimony of a victim of child molestation who was over 16 at the time of trial). See also OCGA §§ 17-8-53; 17-8-54 (authorizing the trial court to close the courtroom under certain circumstances).

7. Finally, Mullis argues that trial counsel was ineffective for failing to (a) demur to the indictment; (b) prepare a defense of

impossibility; (c) challenge the competency of the victim by means of an independent examination; (d) request a Uniform Superior Court Rule 31.3 (B) hearing concerning a letter Mullis himself wrote; and (e) investigate whether the victim had tested positive for genital herpes.

To show ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Suggs v. State*, 272 Ga. 85, 87-88 (4) (526 SE2d 347) (2000), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). "[T]here is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy." *Veal v. State*, 242 Ga. App. 873, 877 (5) (531 SE2d 422) (2000). The question of ineffectiveness is a mixed one of both law and fact: "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." *Suggs*, 272 Ga. at 88 (4).

We note at the onset that Mullis did not testify nor did he present any testimony from his trial counsel at the motion for new trial hearing. Consequently, we assume that each of trial counsel's actions was a result of a conscious trial strategy as opposed to deficient performance. *Eller v. State*, 253 Ga. App. 573, 574 (1) (560 SE2d 60) (2002); *Veal*, 242 Ga. App. at 877 (5) (a). We nonetheless address each of Mullis's specific allegations in turn.

(a) As we held in Division 2 above, Mullis has not shown that a special demurrer would have been successful, and thus cannot make out a claim for ineffective assistance on this basis. *Berman*, 279 Ga. App. at 872.

(b) Contrary to Mullis's assertion, his counsel did present a defense that it would have been impossible for the molestation to have occurred as alleged by the victim due to the lack of a door on the victim's bedroom. The fact that this defense did not succeed does not render his counsel's performance deficient. See *Beck v. State*, 285 Ga. App. 764, 766-767 (3) (647 SE2d 408) (2007) (presentation of unsuccessful defense is a matter of strategy and does not amount to ineffective assistance).

(c) Although Mullis contends that his trial counsel was ineffective for failing to challenge the competency of the victim by means of an independent examination, Mullis failed to proffer any evidence to support his assertion on appeal that the victim was incompetent at the time of trial. He has thus failed to carry his burden of showing ineffective assistance in this regard. See *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 616 (458 SE2d 623) (1995) ("mere speculation" or hearsay cannot provide a sufficient basis for ineffective assistance).

(d) Mullis argues that his trial counsel was ineffective because he failed to request a hearing pursuant to Uniform Superior Court Rule 31.3 (B) in order to determine whether evidence of a prior independent act could be introduced at trial. But the record reveals that it was Mullis, not the state, who disclosed during direct examination the existence of a letter that he wrote in 1990 in which he described his own childhood experiments with oral sex. The state proceeded to cross-examine Mullis concerning the letter. Since Mullis himself opened the door to the subject of the letter, the state was authorized to cross-examine him concerning its contents. See *Fargason v. State*, 266 Ga. 463, 465 (3) (467 SE2d 551) (1996) (defendant who opened door to the subject of her own character could not request a Uniform Superior Court Rule 31.3 hearing on similar transactions). And because Mullis failed to present any evidence to the contrary, we must assume that the introduction of evidence on this issue was a result of a tactical decision by Mullis or his trial counsel. *Eller*, 253 Ga. App. at 574 (1). It follows that trial counsel could not have been ineffective for failing to request a Rule 31.3 (B) hearing concerning the same. See *Freeman v. State*, 278 Ga. 349, 351-352 (2) (c) (603 SE2d 214) (2004) (failure to make a meritless motion cannot prejudice defendant).

(e) Finally, Mullis argues that his counsel should have investigated whether the victim tested positive for genital herpes based upon Mullis's carrying of the virus. Once again, Mullis has not proffered any evidence to show that the victim would have contracted genital herpes from Mullis had the alleged acts occurred. Indeed, as the state's expert testified, proof that the victim did not contract the disease would not have established that those acts did not occur. Mullis simply has not shown that his counsel's performance was deficient or that he was prejudiced by his counsel's actions during the trial. See *Goodwin*, 265 Ga. at 616.

For all these reasons, the trial court did not err when it denied Mullis's motion for new trial.

*Judgment affirmed. Ruffin, P. J., and Andrews, J., concur.*

DECIDED JUNE 25, 2008.

*Smith & Cannon, Chester L. Cannon, Jr.*, for appellant.

*Timothy G. Vaughn, District Attorney, Russell P. Spivey, Assistant District Attorney*, for appellee.