## 77650. MOORE v. THE STATE.
### (378 SE2d 880)

SOGNIER, Judge.

David Timothy Moore was tried by a jury and convicted of the offenses of armed robbery, aggravated assault, aggravated battery, and aggravated assault with intent to rob. He was sentenced to life imprisonment plus 60 years, and he appeals.

Construed to support the verdict, the evidence adduced at trial showed that appellant and Elden Bernardo Dukes arrived in the parking lot outside Provino's Restaurant on Roswell Road in Atlanta in a stolen car at approximately 9:30 p.m. on April 15, 1987. The restaurant had experienced two previous robberies and had hired an off-duty policeman, J. J. Biello, as security personnel. Biello was talking with a friend, Detective Nick Marinelli, also an Atlanta police officer, who was in his van in the parking lot, when appellant and Dukes drove up. Biello and Marinelli observed appellant get out of the passenger side of the car and enter the restaurant. Appellant entered the lobby of the restaurant where the cashier's desk was located, pulled a gun on the restaurant's cashier, Keri Morin, and told her to give him

the money from the cash register. Morin began doing so when the restaurant's assistant manager, Kevin Weekly, came by. Appellant pointed the gun at Weekly and told him to get on the floor behind the cash register, and told Morin to give him more money.

Biello, having become suspicious, took out his gun and entered the restaurant. He observed appellant, whose back was then toward him, pointing a gun at Morin, who was handing money to appellant. Morin saw Biello enter the lobby and nodded to him, whereupon appellant turned and shot Biello twice from a distance of one or two feet. Biello kept approaching and returned fire. A struggle between Biello and appellant ensued, and Biello fell to the ground. Appellant then stood over Biello, pointed his gun at his head, and shot him again, this time in the neck. Marinelli, waiting in the parking lot for Biello, observed the car driven by Dukes drive off and then heard gunfire. He pulled his own gun, and saw appellant run out of the restaurant. Marinelli withheld fire at first, thinking a restaurant patron might be fleeing. Then appellant ran off and Marinelli fired at him. Marinelli briefly searched the parking lot and then rode to the hospital with Biello.

Later that evening, appellant sought treatment for a gunshot wound at Grady Hospital. Marinelli observed appellant in a treatment room at Grady, and positively identified appellant as the man he had seen at Provino's. Morin was shown a photographic lineup in the early hours of the next morning, and picked appellant's photograph out of the lineup as the man who had pointed a gun at her at the restaurant. Weekly was shown the same lineup, and picked a different photograph. Biello positively identified appellant at a preliminary hearing, but admitted that he had a brief glimpse of appellant's picture on television prior to that identification.

1. Appellant contends that a one-on-one confrontation with the witness Keri Morin at a preliminary hearing was an impermissibly suggestive identification procedure, and that consequently the trial court erred by denying his motion to suppress Morin's in-court identification of appellant at trial.

The transcript of the pretrial proceedings reveals that on the morning of a pretrial hearing, appellant's counsel, believing there were problems with the State's witnesses being able to identify appellant, requested of the courtroom deputy sheriff that appellant not be brought up to the courtroom that morning; that he was waiving his right to be present at the hearing. Defense counsel then left to discuss the matter with the trial judge. During the time defense counsel was discussing the matter with the judge, the prosecuting attorney permitted the deputy to bring appellant down despite defense counsel's instructions, and the deputy brought appellant to the hall in front of the jury room where the prosecutor was meeting with Morin, who was

to be a witness at the hearing. When the deputy notified the prosecutor that appellant had been brought down, the prosecutor and Morin exited the jury room and Morin had the opportunity to view appellant, in handcuffs, outside the presence of defense counsel. Although Morin had previously picked appellant's picture from a photographic lineup, no physical lineup had taken place. Appellant argues, citing *Foster v. State*, 156 Ga. App. 672 (275 SE2d 745) (1980), that the one-on-one confrontation in the courtroom hallway outside the presence of appellant's counsel shored up Morin's previously tentative identification, and thus violated appellant's rights.

In *United States v. Wade*, 388 U. S. 218 (87 SC 1926, 18 LE2d 1149) (1967), the Supreme Court held that a pretrial corporeal identification conducted after indictment is a critical stage of the prosecution, thus entitling the accused to the presence of counsel. However, despite the suggestibility inherent in such procedure, a witness' subsequent, in-court identification may nevertheless be admitted if the in-court identification is based on something other than that illegal identification procedure. The crucial question for determination is "whether under the 'totality of the circumstances' the [in-court] identification was reliable even though the confrontation procedure was suggestive." *Neil v. Biggers*, 409 U. S. 188, 199 (93 SC 375, 34 LE2d 401) (1972). *Neil* sets forth the criteria for determining whether a likelihood of misidentification exists, including the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Id. Applying these criteria, we find that Morin's identification of appellant was reliable even assuming the one-on-one pretrial confrontation was impermissibly suggestive.

Morin testified that she had an opportunity to observe appellant closely at the time of the robbery from a distance of a few feet for several minutes in a "well lit" area, that he did not have a cloth over his face, and she "got a good look at his face." Her attention was obviously focused sharply, as she testified that she "just sat there and watched the whole thing. I mean, I couldn't move." She gave an accurate description of appellant after the robbery as a muscular black male wearing a blue Adidas jogging suit, having small eyes, a wide nose, big mouth, and smooth, dark complexion. With the possible exception of the clothing, about which there is confusion because appellant claims to have changed clothing with Dukes at Grady Hospital, this description of appellant was accurate. Morin said at the time she picked appellant's picture out of the photographic array several hours after the crimes, that she "felt sure that that was the person." She testified that although it seemed to her that he looked different in the

photograph, she was positive that appellant was the person she was identifying as the robber. Accordingly, "[a]ssuming without deciding that [the pretrial one-on-one confrontation between Morin and appellant] was unnecessarily suggestive, the evidence shows that [Morin's] in-court identification of the defendant was based, not on the confrontation at [the preliminary hearing], but on the opportunities [she] had to observe the defendant on the evening of the [robbery]. . . . As the basis for the courtroom identification was independent of the allegedly suggestive confrontation procedure, it was not error for the trial court to deny the motion to suppress. [Cit.] Considering [Morin's] opportunities to observe the defendant [during the robbery and] shooting, there was little likelihood of misidentification of the defendant at the time of [her] in-court identification. [Cit.]" *Callaway v. State*, 257 Ga. 12, 14 (3) (354 SE2d 118) (1987).

Although appellant also objects, albeit obliquely, to Marinelli's viewing appellant at Grady Hospital in a one-on-one confrontation, that confrontation occurred before appellant had been charged, and consequently was not impermissible. See *United States v. Wade*, supra. Further, Marinelli testified that he had gotten a good look at appellant in the parking lot before appellant entered the restaurant, and he identified appellant's photograph at the pretrial hearing.

Moreover, both Biello and Dukes identified appellant as the perpetrator of the crimes. Biello testified that his identification of appellant was based not on the photograph he saw on TV, but on the fact that he "looked right in [appellant's] face when he shot me in the neck," and that he would "never forget the face." Dukes, appellant's alleged accomplice, positively identified him as the person with whom he committed the crime, providing further support to the reliability of the identifications. See *Houston v. State*, 187 Ga. App. 335, 339 (4) (370 SE2d 178) (1988).

Because of the reliability of the in-court identifications and the corroboration provided by other evidence concerning appellant's identity, we find no merit in this enumeration.

2. Appellant contends he should not have been convicted of and sentenced for both the offenses of aggravated assault (count two) and aggravated battery (count three) of Biello because those offenses merged. We do not agree. OCGA § 16-1-7 (a) provides that "[w]hen the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if: (1) One crime is included in the other; or (2) The crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct."

Clearly, subsection (2) is inapplicable because these two offenses do not differ only in that one is a more specific form of the other. "[A]

crime is an included crime and multiple punishment therefor is barred if it is the same as a matter of fact *or* as a matter of law . . . ." *State v. Estevez*, 232 Ga. 316, 319 (206 SE2d 475) (1974). OCGA § 16-1-6 (1) sets out the rule for determining whether a crime is included as a matter of fact ("[i]t is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged"). OCGA § 16-1-6 (2) governs the determination of whether a crime is included as a matter of law ("[i]t differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission").

Aggravated assault is not an included offense of aggravated battery as a matter of law within the meaning of OCGA § 16-1-6 (2). In determining whether the two offenses merged in fact, we look to the actual evidence introduced at trial. " '[I]f the state uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact under [OCGA § 16-1-7 (a)].' [Cit.]" *Haynes v. State*, 249 Ga. 119, 120 (2) (288 SE2d 185) (1982).

In this case, Biello testified that appellant shot him twice when he first turned and saw him. Subsequently, they struggled and appellant stood over him and shot the officer in the neck, which paralyzed him. That last shot was not fired in furtherance of the robbery or to deter Biello, who was lying on the floor, but was a separate battery. Compare *Mills v. State*, 187 Ga. App. 79, 80-81 (4) (369 SE2d 283) (1988) and *Overstreet v. State*, 182 Ga. App. 809, 810 (1) (357 SE2d 103) (1987). The State could well have proved count two without introducing any evidence concerning the final shot, and could have proved count three without introducing any evidence of the first two shots. Accordingly, the offenses did not merge in fact. See *Jones v. State*, 185 Ga. App. 595, 596 (2) (365 SE2d 153) (1988).

3. In appellant's final enumeration of error he alleges there is a fatal variance between the allegata and probata as to count four. Count four of the indictment charged appellant with aggravated assault with intent to rob, in that he "did unlawfully commit an assault upon the person of Kevin Weekly by pointing a pistol at him, the same being a deadly weapon; all with intent to rob the said Kevin Weekly." It is uncontroverted that appellant pointed a gun at Weekly. Appellant contends, however, that the State failed to prove that the pointing of the deadly weapon was done with the intent to rob Weekly. We find no merit in this contention. At the time appellant pointed the gun at Weekly he was in the process of robbing the restaurant, of which Weekly was the manager. " 'Every crime consists in the union or joint operation of act and intention. Sometimes the

intention can be proved, sometimes it can only be inferred . . . ; and the general rule laid down by our Code is, that the intention will be manifested by the circumstances connected with perpetration of the offense.' [Cits.] 'Intent is a question for the jury.' [Cit.]" (Footnote omitted.) *Fussell v. State*, 187 Ga. App. 134, 136 (4) (369 SE2d 511) (1988). The jury was authorized to conclude that appellant pointed the gun at Weekly to further the robbery, and they were thus authorized to convict appellant of the offense as charged. See id. at 136-137 (4).

*Judgment affirmed. Carley, C. J., and Deen, P. J., concur.*

Decided February 1, 1989 —
Rehearing denied February 13, 1989.

*John T. Chason, Rise H. Weathersby*, for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Richard Hicks, Henry Newkirk, Assistant District Attorneys*, for appellee.