## A04A1237. WILKERSON v. THE STATE.
### (600 SE2d 677)

ELDRIDGE, Judge.

A jury convicted Johnny Wilkerson of aggravated child molestation, enticing a child for indecent purposes, and aggravated sodomy based on evidence of acts committed against D. M., a six-year-old boy. The jury also convicted Wilkerson of child molestation based on evidence of acts committed against D. P., Wilkerson's great-nephew. Wilkerson appeals from the verdict and sentence entered thereon. On appeal, Wilkerson alleges that the evidence was insufficient to sustain the verdict and that the trial court erred in failing to merge the aggravated child molestation offense with the aggravated sodomy offense.

When viewed in the light most favorable to the verdict,[1] the evidence shows that D. M. was a neighbor of Wilkerson's. After the death of Wilkerson's wife, D. M.'s mother often went to Wilkerson's home to cook dinner for him and took D. M. with her. Wilkerson would take D. M. for walks in the junkyard that was beside Wilkerson's house. D. M.'s mother testified that in August 2002, after she prepared dinner for Wilkerson, she stepped outside the house to smoke a cigarette. When she walked back inside, she saw Wilkerson and D. M. lying in the living room recliner. They both jumped when they heard her come in. D. M.'s hand appeared to be inside Wilkerson's pants. When she walked by the recliner, Wilkerson's shirt was pulled up and his sweat pants were pulled down below his stomach and he was trying to pull them the rest of the way up. Upon questioning, D. M. told his mother that "he [Wilkerson] had touched me. And he has put his thing in my behind." D. M. further stated that this had happened on many occasions, starting in the summer of 2000, after Wilkerson's wife died.

D. M.'s mother testified that she did not go back to Wilkerson's house again. For the next two weeks she was indecisive over what to do, but finally decided to report the incident to police. D. M. stated to Detective Lamar DePratter of the Brantley County Sheriff's Office that he was touching Wilkerson's "private parts" when his mother walked into the living room. D. M. further stated that Wilkerson had run his hand down into D. M.'s pants and that Wilkerson had placed his "private" in D. M.'s "butt." D. M. stated that this had occurred in an old trailer located in Wilkerson's junkyard. Lori Moody of the Brantley County Department of Family and Children Services who sat in on Detective DePratter's interview with D. M. confirmed that

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

D. M. stated that Wilkerson took him to an old trailer in the back of the junkyard and that Wilkerson put his "private" in his "behind."

Cathy Slay-Chipp, a registered nurse with the Gateway Community Service Board in Brunswick, who is a certified family nurse practitioner and sexual assault nurse examiner, was called to assist Dr. Doris Kinney in examining D. M. Slay-Chipp testified that in her experience it was unusual for a six-year-old child to make false allegations regarding sexual abuse. Slay-Chipp testified that, in her opinion, D. M. knew the difference between the truth and a lie and the difference between a good touch and a bad touch. She further testified that D. M.'s statements about what had occurred were consistent. Slay-Chipp testified that D. M. stated to her that Wilkerson had placed his "private" in his "butt." Slay-Chipp went on to testify that on a picture of a child D. M.'s age, D. M. identified the genital area as the "private area" and the posterior of the child as his "butt." Slay-Chipp further testified that D. M. stated that the last time this had happened had been approximately two weeks earlier.

The physical examination given D. M. did not show any acute injuries to the rectum. Slay-Chipp testified that she would not expect any, since the last incident D. M. reported had occurred two weeks earlier. The exam revealed, however, a skin tag to the left of the midline of the rectum and vascular engorgement of the rectum. Slay-Chipp testified that D. M. did not have a history of constipation or hemorrhoids and that under such circumstances the skin tag was very consistent with penal penetration. Dr. Kinney testified that while it was not impossible that penal penetration could have caused the skin tag, he was not aware of an anal skin tag being a sign of sexual abuse. He attributed the skin tag to a developmental stage or as a result of anal itching or allergic reaction to soaps. Dr. Kinney testified that, however, the vascular engorgement of the rectum was consistent with penal penetration.

At trial, D. M. testified that Wilkerson had touched him inappropriately. D. M. testified that Wilkerson had placed his hands and his mouth on D. M.'s "privates" and that Wilkerson had stuck his "private" in D. M.'s "bottom." D. M. testified that the act of anal intercourse was painful and that he cried. D. M. further testified that he was afraid of Wilkerson and that Wilkerson instructed him not to tell anyone what had happened.

The second victim, D. P., testified that he spent the night at Wilkerson's house shortly after Wilkerson's wife died. D. P. testified that Wilkerson asked him to sleep with him in his bed. D. P. woke up during the night to find Wilkerson touching his "privates" through his clothing. D. P. further testified that he got up, went into the living room, and slept the remainder of the night on the sofa with his Aunt Pat. D. P. testified that he was frightened of Wilkerson during the

remainder of his visit and tried to stay away from Wilkerson, but that Wilkerson was mean to him and called him names. D. P. testified that he did not tell anyone what had occurred until he heard what had happened to D. M. *Held*:

1. Wilkerson challenges the sufficiency of the evidence.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, [supra]. Conflicts in the testimony of the witnesses, including the State's witnesses, [are] a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld. The testimony of a single witness is generally sufficient to establish a fact.

(Footnotes omitted.) *Phagan v. State*, 243 Ga. App. 568, 569-570 (2) (533 SE2d 757) (2000).

We find that the evidence recounted above amply supports Wilkerson's convictions under the standard of *Jackson v. Virginia*, supra.

2. Wilkerson alleges that the aggravated child molestation charge (Count 1) should merge with the aggravated sodomy charge (Count 3). We agree.

Count 1 of the indictment charging Wilkerson with aggravated child molestation and Count 3 of the indictment charging Wilkerson with aggravated sodomy are identical, except for the element of force contained within the aggravated sodomy count, in that both alleged that between January 1, and August 12, 2002, Wilkerson committed an act of anal sodomy against D. M.

The aggravated child molestation charge and the aggravated sodomy charge . . . were both based on the same act of sodomy. OCGA § 16-6-2 prohibits sodomy generally while OCGA § 16-6-4 prohibits sodomy involving a child. Accordingly, while it was proper to prosecute appellant for both aggravated sodomy and aggravated child molestation, he should have been convicted and sentenced for only one of the two rather than for both.

(Citations and punctuation omitted.) *Lewis v. State*, 205 Ga. App. 29, 30 (2) (421 SE2d 339) (1992).

While in this case the evidence showed that Wilkerson committed multiple acts of anal sodomy against D. M.,

> the indictment did not charge the defendant with separate and distinct acts but merely charged him with two different crimes for the same described act. Thus, this case is distinguishable from those cases in which we have upheld the conviction and sentencing for separate crimes and rejected the defendant's claim of merger because the indictment charged the defendant with multiple, distinct offenses.

(Citations omitted.) *Lewis v. State*, supra. On appeal, the State concedes that these two counts were multiple indictments of the same offense. Accordingly, the aggravated child molestation conviction merged into the aggravated sodomy conviction. We, therefore, vacate Wilkerson's conviction and sentence for the crime charged in Count 1 of the indictment (aggravated child molestation). See OCGA §§ 16-1-6; 16-1-7.

*Judgment affirmed in part and vacated in part. Ruffin, P. J., and Adams, J., concur.*

DECIDED MAY 25, 2004.

*McGee & McGee, James B. McGee III,* for appellant.

*Richard E. Currie, District Attorney, George E. Barnhill, Assistant District Attorney,* for appellee.