**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. http://www.gaappeals.us/rules**

**March 13, 2019**

# In the Court of Appeals of Georgia

A18A1647. METCALF v. THE STATE.

BROWN, Judge.

Daniel Metcalf appeals from his convictions of two counts of criminal attempt to commit aggravated sodomy, three counts of criminal attempt to commit aggravated child molestation, and two counts of computer pornography. He contends that the trial court erred by (1) concluding that he made a knowing and voluntary waiver of his *Miranda* rights and (2) merging his criminal attempt to commit aggravated sodomy into his criminal attempt to commit aggravated child molestation instead of the other way around. For the reasons explained below, we affirm.

The record shows that Metcalf was arrested following a police operation commonly referred to as "to catch a predator." A police detective assigned to a special task force investigating crimes against children on the Internet created a

fictional profile on an online gay male dating site with a screen name of "twistedperv_ATLr/tperv." Metcalf responded to the detective's profile, and the two began corresponding by email. During these conversations, Metcalf and the detective engaged in graphic discussions about meeting in person to have anal and oral sex with 12-year-old and 5-year-old brothers. The detective stated in an email that the brothers were his girlfriend's children whom he already had sexually molested. The girlfriend and children referenced in the detective's emails were fictional. When Metcalf arrived at the prearranged meeting place, he was arrested.

1. Metcalf asserts that the trial court erred in ruling that he made a knowing and voluntary waiver of his *Miranda* rights. We disagree.

> Whether a defendant waives his rights under *Miranda* and makes a voluntary and knowing statement depends on the totality of the circumstances. In ruling on the admissibility of an in-custody statement, a trial court must determine whether a preponderance of the evidence demonstrates that the statement was made freely and voluntarily. Unless clearly erroneous, we accept the trial court's factual findings and credibility determinations relating to the admissibility of the defendant's statement. When controlling facts discernible from a videotape are not disputed, our standard of review is de novo.

2

(Citation, punctuation and footnote omitted.) *Francis v. State*, 296 Ga. 190, 194 (3) (766 SE2d 52) (2014). Additionally, we "may consider all the evidence of record, in addition to the evidence adduced at the *Jackson-Denno* hearing, in determining the admissibility of a defendant's statement." (Citations and footnote omitted.) Id. at 194-195 (3).

In this case, the record shows that following his arrest, Metcalf was taken to an interrogation room where his interview with police was video-recorded.[1] The video begins with Metcalf sitting alone for approximately three minutes. When the detective enters the room, he grants Metcalf's request to use the bathroom, and they both exit the room. Metcalf returns less than two minutes later, and an off-screen officer asks general questions relating to his education and military background. When the detective comes into the room approximately 30 seconds later, he says nothing to Metcalf, sits down, and begins completing a form attached to a clipboard. After filling out a portion of the form, he asks for Metcalf's social security number and information about his education and ability to read and write. After establishing that Metcalf had just begun graduate school to study business, the detective began

---

[1] This video was admitted into evidence at trial.

explaining Metcalf's *Miranda* rights as follows, while holding and reading a form on a clipboard:

> Because you have been placed into custody, anytime we talk to somebody, we have to go over their rights. I'm sure you've seen it on TV. Just to let you know what your rights are, okay? That's what this is. Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him or her with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish. If you decide to answer questions now without the lawyer present, you'll still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer. That's probably the most important part. If you start talking and you decide you don't want to talk anymore, you can quit at any time. Now the next is my waiver of rights. I've read this waiver of my rights and I understand what my rights are. I'm willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I'm doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

The detective held the form halfway between himself and Metcalf so that Metcalf had the opportunity to follow along as the detective read from it.

When the detective finished reading the form, he started to hand the clipboard and a pen to Metcalf, who asked, "Can I ask what happens after you guys interview me?" The detective and the off-screen officer in the room explained that the amount of the bond and the length of time he might be incarcerated would be up to a judge. After this explanation, Metcalf states, "I just want to know before I sign anything, because I don't know how everything works." The off-screen officer then states, "That's fine. We'll be happy to answer your questions here." Metcalf then expresses concern that he would need numbers in his phone to call someone to make bond. The detective states they would let Metcalf look at numbers on his phone.

After a momentary pause, the detective then holds out the form and a pen and states, "If you want to talk with us about this, I just need you to sign right there." Metcalf then reaches out with both hands, takes the form and the pen, states, "I mean I [unintelligible]" and begins signing the form. After Metcalf has started signing the form, the off-screen officer states: "By signing that, you're not saying you're guilty or anything else. It's just merely saying that you're willing to talk to us in here today." It is clear from the video that Metcalf did not stop signing the waiver while these words were spoken, and he did not even look up while the officer was speaking. His only response, while still signing the form, was that he wanted to try to go to

5

school the following week. He then handed the form back to the detective, and his interview began.

Relying upon *State v. Darby*, 284 Ga. 271 (663 SE2d 10) (2008), Metcalf filed a motion to suppress his statements in the police station because the detective told him that he needed to sign the form if he wanted to talk with the police. After the jury was selected and sworn, the trial court conducted a *Jackson-Denno* hearing outside of their presence. The detective testified that he informed Metcalf of his rights before questioning him, that Metcalf had no questions specific to these rights, and never invoked any of these rights during the interview. He also denied making any threats or promises of benefit to Metcalf. At the conclusion of the hearing, Metcalf's counsel asserted that his statements in the interview should be suppressed based upon the statement that Metcalf had to sign the waiver in order to speak with the officer, as well as the statement that the form merely said he was willing to speak with them. After hearing argument from the State, the trial court ruled from the bench stating:

> I'll find on the date of the interview . . . the defendant was fully advised of his rights under the *Miranda* decision, voluntarily waived those rights and spoke to the officers. He was not threatened in any way or coerced. He was not promised anything to entice him to waive his rights. He was not under the influence of any drugs or alcohol to the extent he could not

6

understand and knowingly waive those rights. He didn't ask for a lawyer and I will allow the jury to hear the statement.

Following the jury's guilty verdict, Metcalf filed a motion for new trial. After a hearing on that motion, a new trial judge, who did not preside over the trial, issued an order denying the motion for new trial based upon its finding "that there is insufficient evidence to set aside the factual findings of the trial court that the Defendant understood his *Miranda* rights and knowingly, voluntarily and intelligently waived them."

In this case, we conclude that the controlling facts are discernible from the video and support the trial court's finding that Metcalf made a knowing and voluntary waiver of his *Miranda* rights. The officer read all of the appropriate rights to Metcalf, and Metcalf, a college graduate, signed the form without expressing any lack of understanding of his rights.

The Supreme Court of Georgia's opinions in *Darby*, supra, 284 Ga. at 271, and *Benton v. State*, 302 Ga. 570 (807 SE2d 450) (2017), upon which Metcalf relies, do not require a different result. In *Darby*, the trial court granted the defendant's motion to suppress because the police officers told the defendant, who made a spontaneous statement after invoking his right to counsel following a reading of his *Miranda*

7

rights, that he had to sign a waiver in order to tell them his side of the story. 284 Ga. at 271-272 (1). The Supreme Court of Georgia held that the officer's statement "was erroneous because a suspect can always make a spontaneous, voluntary statement which would be admissible at trial." 284 Ga. at 272 (1). Accordingly, "[t]he trial court was authorized to find that [the defendant] did not knowingly and intelligently waive his Sixth Amendment right by executing the *Miranda* waiver, because he signed that document only after receiving the erroneous information that it was a precondition to telling his side of the story." (Punctuation omitted.) Id.

In *Francis*, supra, the Supreme Court of Georgia affirmed a trial court's denial of a motion to suppress where a defendant was told to sign a waiver form "if you'd like to speak with me." 296 Ga. at 195-196 (3) (A). It distinguished its opinion in *Darby*, by pointing out that in *Francis*, the defendant "did not make a spontaneous statement or indicate that he wanted to do so." Id. at 195 (3). As that is also the case here, we find that *Darby* does not control.[2]

_____

[2] We are not persuaded by Metcalf's attempt to distinguish *Francis* on the ground that the officer in *Francis* confirmed that the defendant understood his rights before questioning him. The absence of that fact in this case does not mandate the conclusion that Metcalf could not have made a knowing waiver of his *Miranda* rights. In our view, the lack of any attempt to make a spontaneous statement in both *Francis* and the case now before us is more important.

In *Benton*, supra, the Supreme Court of Georgia conducted a de novo review of a videotaped police interview and reversed the trial court's denial of a motion to suppress. In that case, the defendant "was kicked out of school in the ninth grade and . . . could read, but not that much." (Punctuation omitted.) 302 Ga. at 573 (2). When the officer asked the defendant to explain what the officer had just read to him regarding *Miranda*, it was very clear that he lacked an understanding of his rights. Id. When the officer attempted to explain the rights in simpler terms, he omitted three of the four *Miranda* warnings. Id. at 475 (2). The Supreme Court held that

> a person must understand his rights in order to knowingly and intelligently waive them. . . . Here, the record clearly demonstrates that [the defendant] did not understand the *Miranda* warnings as initially read to him. . . . Because the interrogating officer's subsequent explanation of those warnings was incomplete, we cannot say that [the defendant] knowingly and intelligently waived his rights under *Miranda*.

Id. at 575 (2).

In this case, unlike *Benton*, there is no evidence that Metcalf, a college graduate, did not understand his *Miranda* rights. Moreover, it is clear from the video that he already had made his decision to sign the waiver form *before* the off-screen officer made a misstatement about the effect of the form. Indeed, he continued

9

signing it as the officer spoke. Based upon the facts and circumstances of this case, and in particular our de novo review of the video, we cannot say that the trial court erred by finding that Metcalf made a knowing and voluntary waiver of his *Miranda* rights.

2. Metcalf asserts that the trial court should have merged his attempted aggravated child molestation convictions relating to the five-year-old fictional child into his attempted aggravated sodomy convictions relating to the same child rather than vice versa. We disagree.

(a) *Statutory Provisions*. Two statutory provisions govern merger in Georgia.[3]

Pursuant to OCGA § 16-1-7 (a), an accused may not be convicted of more than one crime arising out of the same criminal conduct where

(1) One crime is included in the other; *or*

---

[3] "Prior to the adoption of [these statutory provisions in] the 1968 Georgia Criminal Code, [merger] questions were determined under the double jeopardy proscriptions of the United States Constitution and the Georgia Constitution." *State v. Estevez*, 232 Ga. 316 (1) (206 SE2d 475) (1974), overruled on other grounds, *Drinkard v. Walker*, 281 Ga. 211, 217 (636 SE2d 530) (2006). In *Estevez*, the Georgia Supreme Court concluded that Georgia's statutory bar to successive prosecutions and multiple convictions for the same conduct is more expansive than the constitutional proscription of double jeopardy. 232 Ga. at 317 (1).

The Georgia Supreme Court examined the new statutory provisions and explained that they "establish alternative rules for determining when one crime is included in another as a matter of fact *or* as a matter of law so as to bar conviction and punishment for more than one crime." (Emphasis in original.) *Estevez*, 232 Ga. at 319 (1). Its reference to inclusion as a matter of fact or a matter of law had meaning at the time because Georgia common law applied the "same-transaction test" to determine that an accused could not be punished for multiple crimes "if they were the same as a matter of fact *and* a matter of law." (Emphasis in original.) Id. See generally *Harris v. State*, 193 Ga. 109, 117 (175 SE2d 573) (1941). Since *Estevez*, Georgia courts have continued to make short-hand references to crimes being included in one another as a "matter of fact" or a "matter of law," despite the lack of any statutory text describing merger in these terms. See, e. g., *Smith v. State*, 298 Ga. 406, 416 (4) (782 SE2d 269) (2016); *Cordero v. State*, 296 Ga. 703, 710 (3) (770 SE2d 577) (2015) (stating "we adopted the 'required evidence' test for determining whether one crime is 'included in' another under OCGA § 16-1-6 (1) and therefore merges as a matter of fact").

(2) The crimes differ only in that one is *defined* to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.

(Emphasis supplied.) A crime is included in the other when:

(1) It is established by proof of the same or less than all the facts *or* a less culpable mental state than is required to establish the commission of the crime charged; *or*

(2) It differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission.

(Emphasis supplied.) OCGA § 16-1-6. As the Supreme Court recognized in *State v. Estevez*, 232 Ga. 316 (206 SE2d 475) (1974), overruled on other grounds, *Drinkard v. Walker*, 281 Ga. 211, 217 (636 SE2d 530) (2006), issues of merger are decided under these statutes. Id. at 317 (1). "Whether offenses merge is a legal question, which we review de novo." (Citation and punctuation omitted.) *Regent v. State*, 299 Ga. 172, 174 (787 SE2d 217) (2016).

With regard to OCGA § 16-1-6 (1), "the 'required evidence test'[4] is utilized to determine whether multiple convictions are precluded because one of the crimes was established by proof of the same or less than all the facts that were required to establish the other crime." (Citation and punctuation omitted.) *Regent*, supra, 299 Ga. at 175. The other statutory provisions regarding merger "resolve potential gaps in the . . . 'required evidence' analysis which otherwise might support multiple convictions for closely related offenses where multiple convictions are unwarranted." (Citation omitted.) Id. The Supreme Court of Georgia recently explained the interrelationship between the required evidence test and other statutory provisions regarding lesser included offenses as follows: "Where . . . each offense requires an element of proof

---

[4] In *Drinkard*, supra, 281 Ga. at 211, the Georgia Supreme Court "rejected the 'actual evidence' test for determining whether a lesser crime was included in a greater crime and instead adopted the 'required evidence' test articulated in *Blockburger v. United States*, 284 U. S. 299, 304 (52 SCt 180, 76 LE 306) (1932)." *Smith v. State*, 290 Ga. 768, 772 (3), n.4 (723 SE2d 915) (2012). Under the former "actual evidence" test, "a lesser crime [was] included in a greater crime if the evidence actually presented at trial to establish the elements of the crime charged also establishe[d] all the elements of the lesser crime." (Citation and punctuation omitted.) *Drinkard*, 281 Ga. at 214. When applying the former "actual evidence" test, our courts sometimes stated the test in terms of whether evidence was "used up" to prove one charge. See, e. g., *Garrett v. State*, 263 Ga. 131, 132-133 (3) (429 SE2d 515) (1993). Whether a single act was necessary to prove a crime also was examined when applying the "actual evidence" test. See, e. g., *Johnson v. State*, 276 Ga. 57, 58-59 (1) (573 SE2d 362) (2002); *Heidler v. State*, 273 Ga. 54, 64 (15) (537 SE2d 44) (2000); *Hawkins v. State*, 262 Ga. 193, 194 (3) (b) (415 SE2d 636) (1992).

13

beyond the degree of injury or culpability that the other does not, neither of the offenses is included in the other, and the crimes do not merge under OCGA §§ 16-1-7 (a) (1) [and] 16-1-6." *Norris v. State*, 302 Ga. 802, 805 (III) (809 SE2d 752) (2018).[5]

(b) *Charges at Issue.* With regard to the crimes at issue here, "[a] person commits the offense of aggravated sodomy when he or she commits sodomy with force and against the will of the other person *or* when he or she commits sodomy with a person who is less than ten years of age." (Emphasis supplied.) OCGA § 16-6-2 (a) (2) (2010). "A person commits the offense of sodomy when he or she performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another." OCGA § 16-6-2 (a) (1) (2010).

"A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child *or* involves an act of sodomy." (Emphasis supplied.) OCGA § 16-6-4 (c) (2010). Child molestation is defined, in relevant part, as "any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse

---

[5] The Supreme Court of Georgia did not address OCGA § 16-1-7 (a) (2) (general/specific conduct) as a potential ground for merger in its opinion.

14

or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a) (1) (2010).

> In Count One of the indictment, the State charged Metcalf with
>
> attempt to commit the crime of aggravated sodomy . . . in that the said accused did knowingly and intentionally perform acts which constituted a substantial step toward the commission of said crime in that the accused did engage in sexually explicit communications . . . describing the accused's desire to engage in oral-genital contact with someone the accused believed to be a five (5) year old male child, . . . arrange a meeting with [said child], and arrive at said meeting location. . . .

Count Three of the indictment contained identical allegations other than charging Metcalf with criminal attempt to commit aggravated child molestation. It contains no allegations regarding physical injury of a child.

> Count Two of the indictment alleged that Metcalf
>
> attempt[ed] to commit the crime of Aggravated Sodomy, in violation of O.C.G.A. § 16-6-2, in that the said accused did knowingly and intentionally perform acts which constituted a substantial step toward the commission of said crime in that the accused did engage in sexually explicit communications . . . describing the accused['s] desire to engage in anal-genital contact with someone the accused believed to be a five (5) year old male child, . . . arrange a meeting with [said child], and arrive at said meeting location. . . .

Count Four of the indictment contained identical allegations other than charging Metcalf with criminal attempt to commit aggravated child molestation. It contains no allegations regarding physical injury of a child.

Finally, it is important to keep in mind that we are dealing with the merger of attempted crimes. OCGA § 16-4-1 provides that "[a] person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." Before considering whether the attempt crimes at issue here merge, we will examine the history of Georgia case law regarding the merger of the underlying offenses of aggravated sodomy and aggravated child molestation. As pointed out by Metcalf in his brief, Georgia courts have issued inconsistent decisions on this issue.

(c) *Merger of Aggravated Sodomy and Aggravated Child Molestation*. In 1992, the Supreme Court of Georgia held:

> OCGA § 16-1-7 (a) provides: "When the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if: (1) One crime is included in the other; or (2) The crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct." OCGA § 16-6-2 prohibits sodomy generally while OCGA §

16

16-6-4[, the aggravated child molestation statute,] prohibits sodomy involving a child. Accordingly while it was proper to prosecute appellant . . . for both aggravated sodomy and aggravated child molestation, he should have been convicted and sentenced . . . for only one of the two rather than for both.

(Citation, punctuation and footnote omitted; emphasis omitted.) *Dobbins v. State*, 262 Ga. 161, 165 (4) (415 SE2d 168) (1992). The Supreme Court of Georgia's opinion fails to specify which crime should have been merged into the other. In *Lewis v. State*, 205 Ga. App. 29 (421 SE2d 339) (1992), this Court quoted the general/specific conduct reasoning of *Dobbins* and concluded that the defendant could only be sentenced for aggravated sodomy or aggravated child molestation. Id. at 330 (2). Like the Supreme Court of Georgia, we failed to specify which crime merged. Id. It is important to note that at the time *Dobbins* was decided, however, the General Assembly had not yet amended the aggravated sodomy statute to include an act of "sodomy with a person who is less than ten years of age." See Ga. L. 2000, p. 1346 §1.[6] Accordingly, *Dobbins* does not govern the merger of aggravated child

---

[6] At the time of the 2000 amendment, aggravated sodomy could be punished by life imprisonment, while the maximum penalty for child molestation was 30 years of imprisonment. Compare former OCGA § 16-6-2 with former OCGA § 16-6-4.

17

molestation based upon sodomy and aggravated sodomy of a child under the age of ten.

In *Wyatt v. State*, 222 Ga. App. 604 (475 SE2d 651) (1996), we took a different approach and applied the "actual evidence" test to conclude that where a single act of sodomy "went to prove the aggravated sodomy charge, that proof 'used up' the evidentiary basis for the charge of aggravated child molestation." Id. at 606 (2). Accordingly, we held that aggravated child molestation merges into aggravated sodomy. Similarly, in *Heidler v. State*, 273 Ga. 54 (537 SE2d 44) (2000),[7] the Supreme Court of Georgia also applied the former "actual evidence" test to conclude that the single act of sodomy

> was necessary to prove the aggravated sodomy count of the indictment, so that there was no remaining evidence upon which to base [the defendant]'s conviction for an additional count of aggravated child molestation. Under the facts of this case, the aggravated sodomy conviction includes the aggravated child molestation charge plus the additional element of force. Accordingly, the aggravated child molestation conviction merged into the aggravated sodomy conviction as a matter of fact.

---

[7] The crimes at issue in *Heidler* took place in 1997, before the 2000 amendment to the aggravated sodomy statute. 273 Ga. at 54, n.1.

18

(Citation omitted.) Id. at 64 (15). In *Johnson v. State*, 276 Ga. 57 (573 SE2d 362) (2002), the Supreme Court of Georgia followed *Heidler* to conclude that the crimes merged, but once again failed to specify which way. 276 Ga. at 59 (1).[8] In a dissent in which two justices joined, Justice Carley took the position that the 2000 amendment to the sodomy statute mandated that aggravated child molestation be merged into aggravated sodomy. In his view,

> [t]he General Assembly was authorized to make a policy determination that, because committing sodomy against a victim under ten years old is a more egregious act than the generally defined offense of aggravated child molestation, that act should be redefined as aggravated sodomy, with its potentially more severe punishment, whereas other acts, including sodomy against a child who is between 10 and 16 years of age, should remain within the definition of aggravated child molestation, with its less severe maximum punishment. . . . There is no indication that the General Assembly intended that such an act shall also remain punishable as aggravated child molestation.

Id. at 65. Citing a rule of construction stating that "a specific statute will prevail over a general statute," Justice Carley asserted that because the recently amended aggravated sodomy statute was a "more specific code section" also carrying a greater

---

[8] The victim in *Johnson* was under ten years old. 276 Ga. at 58 (1).

19

punishment,[9] the defendant should be sentenced under that specific code section. (Citation omitted.) Id. at 65. The dissent did not cite the general/specific conduct language governing merger found in OCGA § 16-1-7 (a) (2).

In *Wilkerson v. State*, 267 Ga. App. 585 (600 SE2d 677) (2004), this Court returned to the general/specific language that originated in *Dobbins* to hold that aggravated child molestation merged into aggravated sodomy.[10] Id. at 587-588 (2). In *Howard v. State*, 281 Ga. App. 797 (637 SE2d 448) (2006), we held for the first time that aggravated sodomy merged into aggravated child molestation rather than the other way around. Id. at 803 (4). In so holding, we relied upon *Johnson*, supra, an actual evidence case that failed to specify which way the two crimes should merge. *Howard*, 281 Ga. App. at 803 (1).

Shortly after our decision in *Howard*, the Supreme Court of Georgia decided *Drinkard*, supra, and changed the test for determining merger under OCGA § 16-1-6 (a) (1) to the "required evidence" test. 281 at 216. In the only case addressing merger

---

[9] In 2006, the General Assembly amended the aggravated child molestation statute to provide for a life sentence. Ga. L., pp. 379, 387-388, § 11. See also *Hancock v. State*, 210 Ga. App. 528, 532 (3) (b) (437 SE2d 610) (1993) (mere fact of longer sentence is not controlling in determining whether an offense is a greater or lesser included offense).

[10] The victim in *Wilkerson* was under ten years of age. 267 Ga. App. at 585.

20

of aggravated sodomy and aggravated child molestation post-*Drinkard*, we cited *Howard*, an "actual evidence" case, to conclude that aggravated sodomy merged into aggravated child molestation. *Barclay v. State*, 306 Ga. App. 766, 768 (2) (702 SE2d 907) (2010). While we cited the required evidence test of *Drinkard*, we merged the two crimes for sentencing because proof of sodomy alleged by Count 4 (aggravated sodomy) was "necessary" to prove aggravated child molestation as alleged by Count 3 and cited a pre-*Drinkard* case as authority for doing so. Thus, while we cited the proper test, we nonetheless applied the former actual evidence standard. See *Lucky v. State*, 286 Ga. 478, 481, n.5 (689 SE2d 825) (2010). *Barclay* is the last reported decision addressing the merger of aggravated child molestation and aggravated sodomy. Having examined this body of law, we must now apply the "required evidence" test to the case before us.

(d) *Application of Required Evidence Test*. Our research has revealed no case addressing the merger of *attempted* aggravated child molestation and *attempted* aggravated sodomy. We therefore begin our analysis with the required evidence test. This test "is utilized to determine whether multiple convictions are precluded because one of the crimes was established by proof of the same or less than all of the facts that

21

were required to establish the other crime." (Citation and punctuation omitted.)

*Regent*, 299 Ga. at 175. Accordingly,

> where the same act or transaction constitutes the violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each [statutory] provision requires proof of a fact which the other does not. If so, then two offenses exist, and one is not "included in" the other.

(Citation and punctuation omitted.) *Womac v. State*, 302 Ga. 681, 684 (3) (808 SE2d 709) (2017). In applying the required evidence test

> the important question is not the number of acts involved, or whether the crimes have overlapping elements, but whether, looking at the evidence required to prove each crime, one of the crimes was established by proof of the same or less than all the facts required to establish the commission of the other crime charged.

*Drinkard*, 281 Ga. at 216.

While the age element for aggravated child molestation overlaps the age requirement for aggravated sodomy in this case, we cannot say that one crime is proved by the same or less than all of the facts required to establish the commission of the other crime. "[E]ach crime requires proof of at least one additional element which the other does not." (Citations and punctuation omitted.) *Linson v. State*, 287

Ga. 881, 886 (4) (700 SE2d 394) (2010). See also *Brown v. State*, 321 Ga. App. 798, 803 (3) (743 SE2d 474) (2013) ("*Drinkard*-required evidence test for merger applies to cases involving attempt crimes"). Attempt to commit aggravated child molestation requires proof that Metcalf "took a substantial step . . . with the intent to arouse or satisfy the sexual desires of either the child or himself," *Lopez v. State*, 326 Ga. App. 770, 773-774 (1) (b) (757 SE2d 436) (2014), while attempted aggravated sodomy does not. Attempted aggravated sodomy requires proof that Metcalf took a substantial step to commit an act of sodomy with a victim under the age of ten, while attempted aggravated child molestation does not. *Collum v. State*, 281 Ga. 719, 724 (6) (642 SE2d 640) (2007) (holding victim's age is element of crime when determining that cruelty to children crime did not merge into malice murder).[11] Cf. *Castaneira v. State*, 321 Ga. App. 418, 429 (6) (740 SE2d 400) (2013) (attempt to commit child

---

[11] Our opinion in *Culbreath v. State*, 328 Ga. App. 153 (761 SE2d 557) (2014), does not require a different result. In that case, we concluded that an age-related amendment to the definition of aggravated assault was a penalty enhancement rather than a separate element of the crime based upon the General Assembly's statement that it enacted the age-related provisions "so as to change the penalty provisions relating to persons convicted of the crime of aggravated assault." (Citation and punctuation omitted.) Id. at 158 (2) (b) (iii). The age-related amendment to aggravated sodomy, on the other hand, was enacted "so as to provide that sodomy with a person who is less than ten years of age shall constitute the offense of aggravated sodomy." Ga. L. 2000, p. 1346.

molestation did not merge into attempt to entice a child for indecent purposes even though premised upon the same conduct because each required proof of fact which the other did not); *Smith v. State*, 320 Ga. App. 408, 413 (2) (b) (740 SE2d 174) (2013) (no merger of cruelty to children requiring age under 18 and cruel mental pain into aggravated child molestation requiring age under 16 and intent to arouse/satisfy sexual desires).[12]

(e) *General and Specific Conduct under OCGA § 16-1-7 (a) (2)*. Having concluded that the crimes do not merge under the required evidence test, we now consider whether they merge pursuant to another statutory method. As one commentator has noted, the prong of the Georgia code regarding general and specific conduct "has rarely been addressed specifically in the opinions of the courts." Daniel's Criminal Trial Practice (2017-2018 ed.), § 26:32. This Code provision requires merger where "[t]he crimes differ *only* in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of

---

[12] Previous cases reaching a contrary conclusion with regard to merger that applied the former "actual evidence" test rather than the current "required evidence" test do not mandate a different outcome here. See *Johnson*, 276 Ga. at 59; *Heidler*, supra, 273 Ga. at 64 (16); *Barclay*, 306 Ga. App. at 768 (2); *Howard*, 281 Ga. App. at 803 (4); *Wyatt*, 222 Ga. App. at 606 (2).

such conduct." (Emphasis supplied.) OCGA § 16-1-7 (a) (2). In *Lavigne v. State*, 299 Ga. App. 712 (2) (683 SE2d 656) (2009), we explained that overlapping phrases in an indictment for a securities violation and theft by conversion did not require a merger because the "phrases [were] merely descriptive of the subject matter of the two offenses and fail[ed] to allege any type of general or specific conduct." Id. at 714-715 (2).

In one of the earliest decisions interpreting OCGA § 16-1-7 (a) (2), we concluded that the crime of terroristic threats did not merge into aggravated assault with intent to murder because "[t]he crimes are mutually independent and each is aimed at prohibiting specific conduct." *Echols v. State*, 134 Ga. App. 216, 218 (4) (213 SE2d 907) (1975). We also have concluded that two general crimes do not merge with one another. See *Sims v. State*, 197 Ga. App. 214, 217 (5) (398 SE2d 244) (1990) (theft by deception and armed robbery "prohibit two designated kinds of general conduct"); *Moore v. State*, 140 Ga. App. 824, 827 (2) (232 SE2d 264) (1976) (burglary is general crime recognized as offense against habitation and attempted armed robbery is general offense against safety and security of a person). Georgia courts have concluded summarily that the following offenses do not merge under

OCGA § 16-1-7 (a) (2): aggravated battery and cruelty to children;[13] armed robbery and aggravated assault;[14] rape and incest predicated on same act of penetration;[15] reckless conduct and aggressive driving;[16] kidnapping with bodily injury and aggravated sodomy;[17] aggravated assault and aggravated battery;[18] and enticing a child for indecent purposes and child molestation.[19]

Our research revealed a small number of cases in which we expressly merged two crimes based upon the general/specific conduct provisions of OCGA § 16-1-7 (a) (2). These crimes include: possession of marijuana (general) into possession with the intent to distribute (specific);[20] theft by taking (general) into either theft by

---

[13] *Waits v. State*, 282 Ga. 1, 4-5 (2) (644 SE2d 127) (2007).

[14] *Harvey v. State*, 233 Ga. 41, 43 (1) (209 SE2d 587) (1974).

[15] *Tinson v. State*, 337 Ga. App. 83, 86 (2), n.1 (785 SE2d 914) (2016).

[16] *Winn v. State*, 291 Ga. App. 16, 19-20 (660 SE2d 883) (2008).

[17] *Olsen v. State*, 191 Ga. App. 763, 764 (1) (382 SE2d 715) (1989).

[18] *Moore v. State*, 190 Ga. App. 278, 281 (2) (378 SE2d 880) (1989).

[19] *Williams v. State*, 156 Ga. App. 481 (1) (274 SE2d 826) (1980).

[20] *Talley v. State*, 200 Ga. App. 442, 446 (4) (408 SE2d 463) (1991).

conversion (specific) or theft by deception (specific);[21] and theft of a motor vehicle (specific) into theft by taking (general).[22]

In this case, we cannot say that attempted aggravated sodomy differs from aggravated child molestation "*only* in that one is *defined* to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct." (Emphasis supplied.) OCGA § 16-1-7 (a) (2). From the plain language of the statute, it is clear that merger under this subsection is determined solely by examining the statutory definitions of each crime. In this case, we are dealing with the same crime, attempt, which criminalizes performance of a substantial step taken "with intent to commit a *specific* crime." (Emphasis supplied.) OCGA § 16-4-1. Therefore, we cannot say that one attempt crime prohibits general conduct while the other prohibits specific conduct; they both require intent to commit a *specific* crime.

To the extent the Georgia Supreme Court's opinion in *Dobbins*, supra, and its progeny, addressed this ground for merger, a different result is not required in this case, because those cases were not addressing attempt crimes. Additionally, after

_____

[21] *Mathis v. State*, 343 Ga. App. 206, 211 (2) (807 SE2d 4) (2017).

[22] *Johnson v. State*, 130 Ga. App. 134, 137 (2) (b) (202 SE2d 525) (1973). We note the anomaly of this case merging a specific crime into a general one, but as this issue is not squarely before us, we decline to address it.

*Dobbins* was decided in 1992, the General Assembly amended the sodomy statute so that now both crimes prohibit sodomy involving a child. Because our opinions in *Lewis*, supra, 205 Ga. App. at 30, and *Wilkerson*, supra, 267 Ga. App. at 587 (2), merely quote and follow the Georgia Supreme Court's language in *Dobbins*, they are also not controlling.

(f) *Less Culpable Mental State under OCGA § 16-6-1 (1)*. With regard to the third ground for merger, grounded upon a "less culpable mental state," OCGA § 16-1-6 (1), our courts examine the mens rea element of the crimes at issue. For example, in *Corson v. State*, 144 Ga. App. 559 (241 SE2d 454) (1978), we concluded that second degree criminal damage to property, requiring reckless or intentional damage to property, merged into first degree arson, requiring knowing damage by means of fire. Id. at 560-561 (1) (c). Accordingly, Georgia courts have concluded that the following crimes can be merged under this provision: possession of marijuana into

possession of marijuana with intent to distribute;[23] harrassing telephone calls into terroristic threats;[24] and reckless conduct into aggravated assault.[25]

In this case, we cannot say that either attempt crime "is established by . . . a less culpable mental state than is required to establish the commission" of the other. OCGA § 16-1-6 (1). Both crimes required that a substantial step be taken "with intent to commit a specific crime." OCGA § 16-4-1.

(g) *Less Serious Injury or Lesser Kind of Culpability under OCGA § 16-1-6 (2)*. Under this provision, a crime is included "when [i]t differs from the crime charged *only* in the respect that a less serious injury or risk of injury to the *same* person, property, or public interest *or* a lesser kind of culpability suffices to establish its commission." (Emphasis supplied.) OCGA § 16-1-6 (2). Accordingly, when the crimes involve injury to a *different* property or public interest, the crimes do not merge under this Code section. See *Epperson v. State*, 340 Ga. App. 25, 35 (3) (a) (796 SE2d 1) (2016) ("[a]ggravated battery and armed robbery do not simply prohibit

---

[23] *Talley*, supra, 200 Ga. App. at 446 (4).

[24] *Todd v. State*, 230 Ga. App. 849, 850-851 (1) (498 SE2d 142) (1998), overruled on other grounds, *Johnson v. State*, 272 Ga. 468, 469 (1) (a), n.2 (532 SE2d 377) (2000).

[25] *State v. Springer*, 297 Ga. 376, 380 (1) (774 SE2d 106) (2015).

29

different degrees of injury or risk of injury; rather, the two crimes prohibit entirely different *categories* of injury – depriving a victim of a member of his body versus depriving a victim of property") (emphasis in original). See also *Shuler v. State*, 195 Ga. App. 849, 850 (1) (395 SE2d 26) (1990) (lesser included jury charge case; fighting words and cruelty to children "differ more than with respect to a less serious injury or risk of injury, or a lesser kind of culpability" because they "prohibit generally different types of conduct and seek to protect different classifications of victims"); *Givens v. State*, 184 Ga. App. 498, 500 (3) (361 SE2d 830) (1987) (lesser included jury charge case; "[s]imple battery focuses on injury to the person while robbery by force involves the taking of property from the person of another by doing physical violence to the victim").

We also have declined to find that one crime is a lesser included offense under this provision when "[t]he offenses are equally serious." *Shockley v. State*, 256 Ga. App. 892, 895 (3) (570 SE2d 67) (2002) (reckless driving and driving under the influence less safe do not merge). Additionally, crimes defined by first and second degrees do not necessarily merge. In *Sullivan v. State*, 331 Ga. App. 592 (771 SE2d 237) (2015), we held that "although the criminal damage to property charges are defined by degrees, they prohibit different risks of injury — knowing interference

30

with property in a manner that endangers human life and damage that results in a certain level of property damage to the property." Id. at 595-596 (1). Accordingly, first and second degree criminal damage to property did not merge under OCGA § 16-1-6 (2). Other crimes not merging under this Code section include: aggravated assault with a knife and armed robbery;[26] aggravated assault and attempted rape;[27] public indecency and public drunkenness;[28] and rape and incest.[29]

On the other hand, we have concluded that the following crimes are lesser included offenses under this provision: possession of a controlled substance included in trafficking in the same substance;[30] robbery by sudden snatching posing a "less serious risk of injury" than armed robbery;[31] "aggravated assault as charged required

---

[26] *Harvey*, supra, 233 Ga. at 43 (1).

[27] *Smith v. State*, 313 Ga. App. 170, 175 (2) (721 SE2d 165) (2011) (court held that separate crime of aggravated assault with intent to rape merged with attempted rape under the required evidence test).

[28] *Loya v. State*, 321 Ga. App. 430, 432 (1) (740 SE2d 382) (2013).

[29] *Tinson*, supra, 337 Ga. App. at 86 (2), n.1.

[30] *Dalton v. State*, 249 Ga. 720, 721 (1) (292 SE2d 834) (1982).

[31] *Millender v. State*, 286 Ga. App. 331, 333 (2) (648 SE2d 777) (2007).

proof of a less serious injury than the aggravated battery as charged";[32] aggravated battery into malice murder arising from same injury;[33] and simple battery into aggravated assault.[34] Based upon our review of OCGA § 16-1-6 (2) and the body of case law governing it, we conclude that attempted aggravated child molestation and attempted aggravated sodomy are equally serious, and one cannot be considered a less culpable offense or one that poses less serious risk of injury.

(h) *Conclusion*. For the reasons outlined above, we find no merit in Metcalf's enumeration of error that the trial court erred by merging attempted aggravated sodomy into attempted aggravated child molestation rather than the other way around. However, as is clear from our analysis, the trial court erred by merging these two crimes in any direction. While this conclusion is different from our previous cases regarding the merger of aggravated sodomy and aggravated child molestation, many of those cases applied the former actual evidence test. This is not the first case in which application of the required evidence test has resulted in an outcome different from that obtained under the former actual evidence test. See, e. g., *Petro v. State*, 327

---

[32] *Thomas v. State*, 310 Ga. App. 404, 412 (5) (714 SE2d 37) (2011).

[33] *Soilberry v. State*, 289 Ga. 770, 772-773 (3) (716 SE2d 162) (2011).

[34] *Hicks v. State*, 337 Ga. App. 567, 570 (3) (788 SE2d 502) (2016).

Ga. App. 254, 261 (2) (758 SE2d 152) (2014) (distinguishing cases merging terroristic threats into aggravated assault pursuant to former "actual evidence" test when determining that "required evidence" test did not require merger of terroristic threats into aggravated assault).

We now consider whether we should vacate Metcalf's sentence for Counts Three and Four (attempted aggravated child molestation) because the trial court should not have merged attempted aggravated sodomy (Counts One and Two). In considering this question, it is important to keep in mind that neither party on appeal has asserted this particular error. Appellate courts "have the discretion to correct merger errors sua sponte — regardless of who is harmed by the error and who benefits from its correction[,]" *Hulett v. State*, 296 Ga. 49, 54 (2) (766 SE2d 1) (2014), "because a merger error results in an illegal and void judgment of conviction and sentence." *Dixon v. State*, 302 Ga. 691 (808 SE2d 696) (2017).

In *Dixon*, the Supreme Court of Georgia recently limited its own discretion in this regard, holding "that, when a merger error benefits a defendant and the State fails to raise it by cross-appeal,[35] we *henceforth* will exercise our discretion to correct the

_____

[35] See OCGA § 5-7-1 (a) (6) (State has right to appeal void order, decision, or judgment).

33

error upon our own initiative only in exceptional circumstances." (Emphasis supplied.) 302 Ga. at 698 (4). It reasoned that exercising "discretion to correct such an error effectively penalizes the defendant for having brought his case before us." Id. Accordingly, it affirmed the defendants' convictions and sentences, despite concluding that the trial court erred by merging armed robbery into malice murder. Id. at 697-698 (4).

In two cases decided after *Dixon*, the Supreme Court declined to exercise its discretion to correct error in the trial court's merger of offenses based upon the State's failure to file a cross-appeal, even though the State argued in its appellee brief that the trial court had improperly merged two offenses. See *Brown v. State*, 303 Ga. 617, 618 (1) (b) (814 SE2d 364) (2018); *Hood v. State*, 303 Ga. 420, 424 (1) (d) (811 SE2d 392) (2018). And in *Stephens v. State*, 303 Ga. 530, 532 (1) (813 SE2d 596) (2018), the Supreme Court refused to look at a merger issue unfavorable to the defendant because the State did not cross-appeal, even though the defendant had raised other merger issues on appeal. Id. at 531 (1), n.2.

In this case, the State not only failed to file a cross-appeal, but has also maintained both in the trial court and before this Court that the attempted aggravated sodomy verdicts merge into the attempted aggravated child molestation verdicts.

Based upon the particular facts and circumstances of this case, and in light of *Dixon*, supra, we decline to exercise our discretion to correct the trial court's merger error sua sponte.

*Judgment affirmed. Miller, P. J., and Goss, J., concur*.